HARTFORD ELECTRIC LIGHT COMPANY *v.*
STANLEY V. TUCKER

(2 cases)

BOGDANSKI, PETERS, WRIGHT, BRENNAN and F. HENNESSY, Js.

Argued December 4, 1980—decision released February 10, 1981

*Stanley V. Tucker,* pro se, the appellant (defendant).

*John C. Bullock,* for the appellee (plaintiff).

PETERS, J. These appeals arise out of a utility receivership. The plaintiff, Hartford Electric Light Co., on June 22, 1977, obtained the appointment of a receiver pursuant to General Statutes § 16-262f. The defendant, Stanley V. Tucker, immediately appealed from that and related orders, challenging both their propriety and their constitutionality. The Appellate Session of the Superior Court found no error; *Hartford Electric Light Co.* v. *Tucker,* 35 Conn. Sup. 609, 401 A.2d 454 (1978); and this court denied certification; 176 Conn. 765, 394 A.2d 202 (1978). The orders challenged by the defendant's present appeals arise out of the judgment rendered on November 14, 1978, and supplemented on June 22,

1979, in which, after hearing, the utility receivership was terminated and certain costs and fees were assessed.

The underlying facts are undisputed at this time. The plaintiff initiated a statutory action pursuant to General Statutes § 16-262f[1] for the appointment of a receiver of rents for a number of apartment buildings owned by the defendant. After a hearing in June, 1977, the trial court, *Allen, J.,* found the defendant to be indebted to the plaintiff for $9031.77 and appointed a receiver. That receiver was subsequently replaced by Timothy W. McNally by an order of the trial court, *Kinney, J.,* on November 18, 1977. After a number of interim proceedings to implement the utility receivership, that receivership was terminated on November 14, 1978, by the trial court, *N. O'Neill, J.,* and control of the

[1] General Statutes § 16-262f provides, in relevant part: "PETITION FOR RECEIVER OF RENTS; HEARING; APPOINTMENT; DUTIES. TERMINATION OF RECEIVERSHIP. NONEXCLUSIVITY OF REMEDY. CONTEMPT. (a) Upon default of the owner . . . of a residential dwelling who is billed directly by an electric . . . company . . . for utility service furnished to such building, such company . . . may petition the superior court or a judge thereof, for appointment of a receiver of the rents or payments for use and occupancy for any dwelling for which the owner . . . is in default. The court or judge shall forthwith issue an order to show cause why a receiver should not be appointed, which shall be served upon the owner . . . or his agent in a manner most reasonably calculated to give notice to such owner . . . as determined by such court or judge, including, but not limited to, a posting of such order on the premises in question. A hearing shall be had on such order no later than seventy-two hours after its issuance or the first court day thereafter. The sole purpose of such a hearing shall be to determine whether there is a sum due and owing between the owner . . . and the company . . . . The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner . . . . The receiver shall pay the petitioner, from such rents or payments for use and occupancy, for electric, gas . . . supplied on and after the date of his appointment. The owner . . . shall be liable for such reasonable fees and costs determined by the court to be due the receiver, which fees and costs may be recovered

properties was transferred to a foreclosure receivership initiated by several banks holding mortgages on the subject properties. Only issues arising out of the utility receivership are presently before us, since this appeal is limited to disputes between this plaintiff and the defendant.

The defendant, appearing pro se, claims that the trial court erred in its approval and administration of the utility receivership, in its award of attorney's fees, in its approval of the report of the rent receiver, and in its award of fees to the rent receiver. We note that our review of the defendant's claims is complicated by the absence of an adequate record. Although mindful of the solicitude afforded to pro se litigants, we can only consider those claims concerning which we have enough information for the review process to operate.

from the rents or payments for use and occupancy under the control of the receiver, provided no such fees or costs shall be recovered until after payment for current electric, gas . . . service has been made. The owner . . . shall be liable to the petitioner for reasonable attorney's fees and costs incurred by the petitioner, provided no such fees or costs shall be recovered until after payment for current electric, gas . . . service has been made and after payments of reasonable fees and costs to the receiver. Any monies from rental payments or payments for use and occupancy remaining after payment for current electric, gas . . . service, and after payment for reasonable costs and fees to the receiver, and after payment to petitioner for reasonable attorney's fees and costs, shall be applied to any arrearage found by the court to be due and owing the company . . . from the owner . . . for service provided such building. Any monies remaining shall be turned over to the owner . . . . The court may order an accounting to be made at such times as it determines to be just, reasonable, and necessary.

"(b) Any receivership established pursuant to subsection (a) shall be terminated by the court upon its finding that the arrearage which was the subject of the original petition has been satisfied, or that all occupants have agreed to assume liability in their own names for prospective service supplied by the petitioner, or that the building has been sold and the new owner has assumed liability for prospective service supplied by the petitioner. . . ."

# I

The defendant's first three claims of error challenge the constitutionality of the utility receivership. The defendant cannot now relitigate the propriety of the receivership per se, because that question was decided against him in the earlier proceedings in the Appellate Session. *Hartford Electric Light Co.* v. *Tucker,* 35 Conn. Sup. 609, 401 A.2d 454 (1978). Res judicata bars a second adjudication here of the facial constitutionality of General Statutes § 16-262f. *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 316–17, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 196, 91 A.2d 778 (1952).

There is no authority in law for the defendant's allegation that the trial court was constitutionally required to appoint him as rent receiver upon his offer to file an appropriate bond. The cases on which he relies, in which the Supreme Court of the United States has developed standards of procedural due process in the area of property rights, are all cases distinguishable from the present litigation, since they all involved prejudgment remedies. See, e.g., *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U.S. 601, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1975); *Mitchell* v. *W. T. Grant Co.,* 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974); *Fuentes* v. *Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556, reh. denied, 409 U.S. 902, 93 S. Ct. 177, 34 L. Ed. 2d 165 (1972). While a putative debtor may have a constitutionally protected right to substitute a bond for a lien *before* there has been a judgment against him, he has no such right, under the cases and the statutes, *after* there has been a

judgment, upon a hearing, affirming his indebtedness. Our statutes permitting dissolution of a lien upon the substitution of a bond are addressed, as were the statutes involved in the Supreme Court cases, to prejudgment liens. See General Statutes §§ 52-304 (attachment lien) and 49-37 (mechanic's lien).

There is no basis in fact for the defendant's allegation that he was not given sufficient notice of the dissolution hearing in the trial court that accepted the receiver's report and terminated the utility receivership. In his letter dated November 2, 1978, to the presiding judge, Judge O'Neill, the defendant expressly acknowledged receipt of a letter from counsel for the plaintiff concerning the disputed November 14, 1978 hearing. We have been referred to no other record concerning the procedures at that hearing. In the absence of a transcript, we cannot look behind the presumption of regularity of service of process and of notice that attaches to judicial proceedings in courts of general jurisdiction. See *Monroe* v. *Monroe,* 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, cert. denied, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); *Lampson Lumber Co.* v. *Hoer,* 139 Conn. 294, 298, 93 A.2d 143 (1952). There is therefore no evidence to support the defendant's assertion that he was denied procedural due process.

We conclude therefore that the defendant's direct constitutional challenges to General Statutes § 16-262f must fail. The statute adequately provided him with an effective opportunity to be heard and with proper notice thereof. The defendant had the right, at a number of different junctures, to present evidence and to cross-examine the plaintiff's

witnesses. In contradistinction to General Statutes § 49-14, the mortgage foreclosure statute found unconstitutional in *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 573–77, 409 A.2d 1020 (1979), this statute does not violate procedural due process on its face and did not violate procedural due process as applied in this case.

## II

The defendant's next claims of error relate to the award of attorney's fees and costs in the amount of $5091.71 and $2631.58. The utility receivership statute expressly provides that "[t]he owner . . . shall be liable to the petitioner for reasonable attorney's fees and costs incurred by the petitioner." The defendant challenges this provision as being unconstitutionally devoid of standards, and challenges the trial court's findings pursuant thereto. We find no error in either regard.

The defendant's attack on the constitutionality of a statutory provision for "reasonable attorney's fees and costs" as devoid of standards cannot be sustained. Statutes providing for an award of attorney's fees customarily state no other limitation than reasonableness; see, e.g., General Statutes §§ 4-197, 22a-44, 33-334, 36-407, 36-449, 47a-18, 52-251; 15 U.S.C. § 15; 42 U.S.C. § 1988; nor would any other limitation appear to be practicable. The defendant's constitutional protection from excessive awards is to be found in the undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing. See *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 567–68, 438 A.2d 759 (1980). Procedural due process is accorded to the defendant because he is provided the opportunity to present evidence

of his own and to cross-examine the witnesses of the plaintiff with respect to the question of reasonableness. See *Society for Savings* v. *Chestnut Estates, Inc.,* supra. The defendant has cited no case, nor have we discovered any, that establishes any further constitutional requirement.

The defendant makes a two-pronged attack on the trial court's factual finding as to fees and costs. On the one hand, the defendant urges that Judge O'Neill was precluded from awarding fees higher than those previously ordered by Judge Kinney, in his order of November 4, 1977. Judge Kinney's order was, however, expressly made "subject to further order of this Court . . . by way of approval of applications for receiver's fees and costs and attorney's fees and costs," and, thus, by its own terms permitted further awards by Judge O'Neill. On the other hand, the defendant urges that the sums awarded were unreasonable. Since the award of attorney's fees and costs constitutes a finding of fact, our review of the award is limited to a determination of whether the decision of the trier was clearly erroneous in light of the evidence and the pleadings in the record as a whole. Practice Book § 3060D; *Stelco Industries, Inc.* v. *Cohen,* supra; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). We find no error in the decision of the trier with regard to its factual finding that attorney's fees of $5091.71 and costs of $2631.58 were reasonable. It may well be true that awards based on hourly rates may under some circumstances be inappropriate, but the defendant has produced no evidence that the trier was bound to believe that consideration of hours spent and of reasonable hourly rates was inappropriate in this case. The defendant's asser-

tion that the attorney was incompetent was likewise an assertion to be evaluated by the trier of fact and not by this court. Finally, the trier was entitled to consider reasonable the time and effort expended by the attorney in defending his client in various federal court proceedings even though the federal court, operating under different guidelines,[2] did not award such fees. In short, all of the defendant's complaints about the attorney's fees were matters to be considered by the trial court in its determination of what was reasonable in light of all of the circumstances before it. See *King* v. *Greenblatt*, 560 F.2d 1024, 1026 (1st Cir. 1977). Nothing that has been presented on this appeal warrants our redetermination of the trial court's findings of fact.

## III

The defendant's claims of error with regard to the trial court's acceptance of the final report of the receiver McNally charge failures of management and accounting with respect to the receivership. The defendant also alleges that, upon termination of the utility receivership, proceeds were available that should have been disbursed to him. None of these claims can survive the factual findings of the trial court to the contrary; again no evidentiary basis has been provided for a challenge in this court to these findings. Since, as we have concluded, Judge O'Neill had the power to assess the receivership with costs and fees greater than those initially awarded, on an interim basis, by

---

[2] A federal bankruptcy court has no jurisdiction to award attorney's fees until the proceedings before it result in the creation of a bankruptcy res. See 11 U.S.C. § 105 (1978). In this case, the plaintiff successfully opposed the defendant's efforts to interpose bankruptcy proceedings.

Judge Kinney, his power extended to the expenses incident to the receivership as well as to the fees properly charged by the plaintiff's attorney.

The defendant's underlying challenge to the administration of the receivership appears to rest on the perceived injustice of permitting a utility receivership to take rent receipts as a first lien, without regard to the costs of maintenance or mortgage obligations. It may well be true that utility receiverships will often, as in this case, lead to foreclosure receiverships and thus risk further impairment of inner city housing stock. This court is, however, not the proper audience to which to address such arguments of public policy. *Laurel Bank & Trust Co.* v. *Mark Ford, Inc.*, 182 Conn. 437, 442–43, 438 A.2d 705 (1980); *General Motors Corporation* v. *Mulquin*, 134 Conn. 118, 132, 55 A.2d 732 (1947). The legislature might have concluded that a utility receivership is a remedy required as a tradeoff for the limitation imposed on the utility's right to terminate service for nonpayment of utility bills. Such limitations were enacted as part of the same legislation, Public Acts 1975, No. 75-625,[3] now General Statutes § 16-262c et seq., as that authorizing the utility receivership.

## IV

The defendant's final claims of error challenge the award of fees to the receiver McNally for his services during the utility receivership.[4] In large

---

[3] The legislative history of Public Acts 1975, No. 75-625 indicates that the legislature was aware of the fact that its enactment would permit utility bills, in the event of a receivership, to take priority over mortgage and insurance payments. 18 H. R. Proc., Pt. 9, 1975 Sess., pp. 4354-55.

[4] These claims of error are the subject matter of the defendant's second appeal, in case No. 10083; the matters previously discussed arise out of the appeal in case No. 10198.

part, these claims duplicate the defendant's challenge to the award of attorney's fees, discussed earlier in this opinion. Again we note that the utility receivership statute, General Statutes § 16-262f, expressly authorizes the award of "reasonable fees and costs determined by the court to be due the receiver." Again we reiterate that the defendant has provided this court with no basis upon which to find error in the determination of Judge O'Neill that he had the authority to award McNally a fee of $12,000 (less the sums previously awarded by Judge O'Donnell, plus costs). The trial court expressly found that the receiver "has spent over 300 hours working on this case. He has been diligent in the face of enormous interference from the defendant." Such interference is documented by the earlier judgment of the trial court, *Satter, J.*, holding the defendant in contempt, pursuant to § 16-262f (d), for collecting rents that were to have been turned over to the receiver. There is therefore no justification for the defendant's attack on Judge O'Neill's conclusions of fact and law. See *Jacobs* v. *Ringling Bros.-Barnum & Bailey Combined Shows, Inc.*, 141 Conn. 86, 94, 103 A.2d 805 (1954). We note in particular that the defendant's claim of bias and prejudice on the part of Judge O'Neill is completely unwarranted.

The defendant raises two further challenges to the legality of Judge O'Neill's award. One argument reiterates the proposition, addressed earlier in this opinion, that § 16-262f is constitutionally deficient in failing to set adequate standards for the award of fees and costs. The second argument suggests that the Connecticut Anti-Trust Act; General Statutes §§ 35-24 through 35-45; bars an award to the receiver at the rate of $40 per hour because

the plaintiff allegedly contracted and conspired with the receiver to fix prices for his services at an unreasonably high "attorney rate" for work that could have been done less expensively by someone who was not an attorney. This second argument was not presented to the trial court, and there is no evidence whatsoever before us that supports it. We are therefore not able to respond to it in any fashion.

There is no error in the appeal in case No. 10198 or in the appeal in case No. 10083.

In this opinion the other judges concurred.