[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case is a Petition for Appointment of a Receiver of Rents, brought by The Metropolitan District, a municipal water utility corporation, against the Respondent, Rudolph Pizzoferrato, under Conn. General Statutes, Section 16-262f.
This statute provides as follows:
 "(a) Upon default of the owner, agent, lessor or manager of a residential dwelling who CT Page 5723 is billed directly by an electric, gas, telephone or water company or by a municipal utility for utility service furnished to such building, such company or municipal utility may petition the superior court or a judge thereof, for appointment of a receiver of the rents or payments for use and occupancy for any dwelling for which the owner, agent, lessor or manager is in default. . . ."
There are two buildings involved, 101 and 107 Vine Street, Hartford, Conn. Each contains twenty living units.
The Respondent and Rudolph Pizzoferrato, Sr., received title to both buildings on September 6, 1991, from S. and A. Associates, and Rudolph Pizzoferrato, Sr., on September 10, 1991, quit-claimed his interest to the Respondent. At the time of these conveyances, there was an accummulated [accumulated] water bill of $3,377.42 for 101 Vine Street, and $2,094.16 for 107 Vine street. On January 22, 1992, the Respondent quit-claimed the properties to a Connecticut Corporation, Pope Realty, Inc. At that time the balance owed was $4,236.66 for 101 Vine Street, and $2,784.96 for 107 Vine Street.
On the date this Petition was filed, January 29, 1992, the record owner of both buildings was Pope Realty, Inc. This corporation was voluntarily dissolved on December 28, 1992, without notice to the Petitioner, by its sole directors and stockholders, the Respondent and David Garvey. The Respondent and David Garvey under the name of Pope Management were in possession of the management of the premises on or about December 1988, and have been ever since. The Respondent testified that the water bills should be coming to him and David Garvey, and that he's been involved in managing the property since 1988. The Respondent is therefore properly before the Court in this petition as a manager of the properties involved.
In order to find whether Section. 16-262f is applicable to this case, the Court must determine whether the Respondent is in "default." What does "default" mean in the context of Section 16-262f?
The Court has examined the legislative history of this CT Page 5724 statute in an effort to ascertain the meaning of "default", and therefore the intent of the legislature. During discussion of the bill on May 21, 1975, Representative Gerald Stevens asked Representative Samuel Gejdenson what ""default" modifies?" Mr. Gejdenson answered "I believe "default" means failure to pay the bill." Mr. Gejdenson also said to Mr. Stevens "and also I might recommend that he look at Webster." See Conn. General Assembly 18 H.R. Proc., Pt. 9, at 4353, 4354 (May 21, 1975).
Webster's New International Dictionary, Second Edition, defines "default" as "Failure to do what is required by duty or law."
Our Conn. Supreme Court has defined "default" as follows:
 "A default is an "omission of that which ought to be done," or alternatively, "neglect or failure of any party to take step[s] required of him in [the] progress of [a] cause." Black's Law Dictionary (4th Ed.)."
Steve Viglione Sheet Metal Co. v. Sakonchick, 190 Conn. 707, 710
note 4, (1983).
Black's also states that "More specifically, it is an omission or failure to perform a legal or contractual duty. . . . to observe a promise or discharge an obligation."
Default is defined in the treatise "Words and Phrases" as "a nonpayment without the consent of the obligee." 11A Words and Phrases, 1971 (Suppl. 1992).
The Respondent admits that he has not paid the water bill of July 1991 for both properties. (Respondent's Trial Brief, dated May 5, 1993, 14th page). He contends that receivership is an inappropriate remedy due to the current status of billing and the disputed nature of the Plaintiff's claim.
The bill of July, 1991, which was based on an actual reading of the water meters, followed estimated bills that had been rendered continuously back to January 1989. These July 1991 actual readings showed sharply higher water usage during that period than during comparable periods, both before and since. CT Page 5725
There was conflicting evidence regarding whether the Petitioner had access to the meters during the periods in question; the Court finds that Petitioner's access was curtailed sufficiently to warrant the estimated billings.
It is the Respondent's position that the water consumption claimed by the Petitioner as a result of the July 1991 meter readings is not correct; that the readings were false readings; and that the indicated consumption was not even close to the actual consumption.
Evidence was elicited during trial that the water meters installed in both properties in 1972 remained there until April 1992 (107 Vine Street), and September 1992 (101 Vine Street). Both were tested upon removal by running a known amount of water through them, and both registered with 100% accuracy.
The Respondent raised four issues in his Trial Brief of May 5, 1993, 16th and 17th pages.
"1. Pursuant to Conn. Practice Book Section 16-259 (a) the Plaintiff is unable to bill for inaccurate billing beyond a ninety day period when the customer has not denied the Plaintiff access to the premises."
The Respondent meant to refer to Conn. General Statutes16-259(a), rather than to the Conn. Practice Book. However, section 16-259(a) does not apply to the Petitioner Metropolitan District. (See definition of water company, Conn. General Statutes 16-1(a)(10)).
"2. Default as defined by 16-262a-f must be considered on a whole. Provisions of 16-262c(IV)b(iii) specifically addresses what rights the MDC has when there is a disputed bill and when the customer pays the bills prior to the disputed bill and continues to make payments on subsequent bills after the disputed payment. It is the position of the Defendant that16-262a-f must be read in its entirety as being statutory promulgation of the rights and remedies of the Plaintiff."
The statute relevant to determination of the issues in this case is Sect. 16-262f.
The Court has considered whether the Respondent is in default and finds that he is in default for failure to pay due CT Page 5726 and owing water bills for 101 and 107 Vine Street, Hartford.
"3. The Defendant has failed to bear its burden of proof on the amount of water consumption used by the parties on the premises 101 and 107 Vine Street."
The Court finds that the Petitioner has proved by a fair preponderance of the evidence that as of April 7, 1993, based on consumption of water at 101 and 107 Vine Street, Hartford, as measured by meters that were functioning properly, the respondent was indebted to the Petitioner in the amount of $5,087.61 for 101 Vine Street, Hartford; and $2,360.65 for 107 Vine Street. The last payment on each account was November 20, 1992.
"4. The procedure by which the Plaintiff has engaged and the request to appoint a receiver in a summary process action on a disputed bill when the Defendant is paying all undisputed water bills is [(in)] unconstitutional inasmuch as the Defendant has been denied his fourteenth amendment right to prepare a defense in all civil actions by a state agency. It has been a longstanding position of this Court that this process of the appointment of a receiver is not a civil cause of action and is a summary process and as such in a disputed bill claim, the Defendant's constitutional rights have been seriously impinged."
The Respondent contends that Conn. General Statute 16-262f
"is not suited to a complicated factual issue such as raised in this case. . . . The special proceeding under 16-262f does not provide for the discovery proceedings provided to other litigants in order to allow them to prepare their defense." Trial Brief, 18th and 19th pages. The Respondent argues that if he cannot compel the production of the meters, he cannot properly prepare the most important evidence to present his defense.
This issue has been considered in a 1978 case decided by the Appellate Session of The Superior Court. In that case the defendant claimed that a proceeding against him under Section 16-262f was a civil action, and that he therefore should have the usual time limits within which to file investigatory pleadings, special defenses and counterclaims. In response, the Plaintiff, Hartford Electric Light Co., argued that if the proceedings were to be treated as a civil action, the Plaintiff could file pleas in abatement, motions to erase and dismiss, CT Page 5727 motions for production, interrogatories, motions for more specific statements, motions to separate, deposition notices, demurrers, motions to expunge, etc., which could delay the case for months, even years. The Court held as follows:
 "The legislature, in enacting Public Acts 1975, No. 75-625 (now 16-262f), sought to assure an immediate hearing by mandating that "[a] hearing shall be had on such order no later than seventy-two hours after its issuance. . ." Furthermore, the legislature emphatically sought to limit the scope of the issues presented by the petition: "The sole purpose of such a hearing shall be to determine whether there is a sum due and owing . . ."
 Since the prohibition against the termination of utility service was summary and absolute, the legislature thus clearly established the summary nature of the plaintiff's remedy. Accordingly, the receivership proceeding is to be short, concise, peremptory and immediate.
 If, on the other hand, the receivership proceeding were to be construed as a "civil action" within the meaning of Title 52 of the General Statutes, it would no longer be a summary proceeding or an adequate remedy, and the legislative intent and regulatory system contained in 16-262f would fail."
Hartford Electric Light Co. v. Tucker, 35 Conn. Sup. 609,613-614 (1978).
A later case discussed Section 16-262f, and stated:
 "Under 16-262f, a public service company may seek appointment of a receiver of rents upon the "default of the owner, agent, lessor or manager of a residential dwelling who is billed directly . . . . for utility service furnished to such building. . ." . . . . The summary rent receivership proceedings authorized by 16-262f constitute, as we have previously recognized, a statutory tradeoff for the requirement of continued service imposed by 16-262f. Hartford Electric CT Page 5728 Light Co. v. Tucker, 183 Conn. 85, 94 (1981). . . . . Because these statutory proceedings are sui generis, they do not require the filing of a companion civil action, . . ."
Southern Conn. Gas Co. v. Housing Authority, 191 Conn. 514,519-520 (1983).
From these cases it is clear that the Respondent is not entitled to the production he claims he has a constitutional right to. Section 16-262f adequately provided him with an effective opportunity to be heard; he was heard; he presented evidence and vigorously cross-examined the Petitioner's witnesses. See Hartford Electric Light Co. v. Tucker, 183 Conn. 85,90-91 (1981).
Furthermore there was testimony in this case that both water meters were tested and shown to be accurate. Any witness so testifying was cross-examined by the Respondent's attorney.
The Court finds that Section 16-262f does not violate procedural due process either on its face or as it was applied in this case.
The Court finds that the Petitioner has proved all the essential elements of its claims under Section 16-262f of the Conn. General Statutes, that the amount due and owing to the Petitioner from the Respondent as of April 7, 1993 is $5,087.61 for 101 Vine Street, Hartford, and $2,360.65 for 107 Vine Street.
The Court appoints Robert Pagliaro, d.b.a., Collect Associates, 392 River Road, Shelton, Conn., as receiver of rents, in accordance with the ORDER PERTAINING TO THE APPOINTMENT OF A RECEIVER OF RENTS dated April 2, 1993.
The Court orders the Respondent to pay court costs of $178.00 and an attorney's fee in the amount of $1,500.00 for services rendered to date.
Richard A. Walsh, J. CT Page 5729