CONNECTICUT LIGHT AND POWER COMPANY ET AL. v.
MARIA DASILVA, EXECUTRIX (ESTATE OF JOSEPH
DASILVA), ET AL.
(14977)

PETERS, C. J., and CALLAHAN, NORCOTT, KATZ and PALMER, Js.

Argued October 26—decision released December 6, 1994

*Jeanine M. Dumont,* with whom was *Bonnie L. Amendola,* for the appellants (plaintiffs).

*Steven M. Olivo,* for the appellees (defendants).

PETERS, C. J. The dispositive issue in this case is whether a trial court has discretion to deny a petition for a utility rent receivership with respect to multi-family residential property once the utility company has established that the owner or lessor of the property is currently in default in the payment of utility charges. The plaintiffs, Connecticut Light and Power Company and Yankee Gas Services Company, filed a petition for an order to show cause for the appointment of a receiver of rents pursuant to General Statutes § 16-262f[1] for designated properties owned by the

---

[1] General Statutes § 16-262f provides in relevant part: "PETITION FOR RECEIVER OF RENTS; HEARING; APPOINTMENT; DUTIES. TERMINATION OF RECEIVERSHIP. LIENS. NONEXCLUSIVITY OF REMEDY. CONTEMPT. (a) Upon default of the owner, agent, lessor or manager of a residential dwelling who is billed directly by an electric, gas, telephone or water company or by a municipal utility for utility service furnished to such building, such company or municipal utility may petition the superior court or a judge thereof, for appointment of a receiver of the rents or payments for use and occupancy for any dwelling for which the owner, agent, lessor or manager is in default. The court or judge shall forthwith issue an order to show cause why a receiver should not be appointed, which shall be served upon the owner, agent, lessor or manager or his agent in a manner most reasonably calculated to give notice to such owner, agent, lessor or manager as determined by such court or judge, including, but not limited to, a posting of such order on the premises in question. A hearing shall be had on such order no later than seventy-two hours after its issuance or the first court day thereafter. The sole purpose of such a hearing shall be to determine whether there is an amount due and owing between the owner, agent, lessor or manager and the company or municipal utility. The court shall make a determination of any amount due and owing and any amount so determined shall constitute a lien upon the real property of such owner. A certificate of such amount may be recorded in the land records of the town in which such prop-

defendants Maria DaSilva, both individually and as executrix of the estate of Joseph DaSilva, and JAG, Ltd.[2] After a hearing, the trial court denied the petition. The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse.

The relevant facts are undisputed. The plaintiffs petitioned for the appointment of a rent receiver on

erty is located describing the amount of the lien and the name of the party in default. When the amount due and owing has been paid the company or municipality shall issue a certificate discharging the lien and shall file the certificate in the land records of the town in which such lien was recorded. The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner, agent, lessor or manager. The receiver shall pay the petitioner or other supplier, from such rents or payments for use and occupancy, for electric, gas, telephone, water or heating oil supplied on and after the date of his appointment. The owner, agent, lessor or manager shall be liable for such reasonable fees and costs determined by the court to be due the receiver, which fees and costs may be recovered from the rents or payments for use and occupancy under the control of the receiver, provided no such fees or costs shall be recovered until after payment for current electric, gas, telephone and water service and heating oil deliveries has been made. The owner, agent, lessor or manager shall be liable to the petitioner for reasonable attorney's fees and costs incurred by the petitioner, provided no such fees or costs shall be recovered until after payment for current electric, gas, telephone and water service and heating oil deliveries has been made and after payments of reasonable fees and costs to the receiver. Any moneys from rental payments or payments for use and occupancy remaining after payment for current electric, gas, telephone and water service or heating oil deliveries, and after payment for reasonable costs and fees to the receiver, and after payment to the petitioner for reasonable attorney's fees and costs, shall be applied to any arrearage found by the court to be due and owing the company or municipal utility from the owner, agent, lessor or manager for service provided such building. Any moneys remaining thereafter shall be turned over to the owner, agent, lessor or manager. The court may order an accounting to be made at such times as it determines to be just, reasonable, and necessary. . . .

"(c) Nothing in this section shall be construed to prevent the petitioner from pursuing any other action or remedy at law or equity that it may have against the owner, agent, lessor or manager."

[2] Although the plaintiffs' petition also cited Steven Olivo, trustee, as a defendant, the plaintiffs withdrew the case as to him.

August 18, 1993. The defendants had made no payments on the applicable utility accounts for their residential property since February 1, 1993. Because of prior arrearages for utility services, DaSilva, as executrix and individually, had previously executed, on February 14, 1992, a promissory note and a guaranty secured by two mortgage deeds.[3] On January 31, 1993, when these instruments were in default, the defendants owed the plaintiffs $594,405.01. Further utility charges have continued to accrue since February 1, 1993. At the time of the plaintiffs' petition for the appointment of a receiver of rents, they had also initiated proceedings for the foreclosure of the mortgages. Subsequent to the hearing on the petition for the utility rent receivership, the trial court determined, in a separate hearing, that there was reason to believe that the indebtedness secured by the mortgages was undersecured in the amount of $200,000.

The trial court denied the plaintiffs' petition for the appointment of a rent receiver for three reasons. It concluded that the plaintiffs: (1) had failed to establish a threat of waste or loss; (2) had taken the mortgage note and guaranty in substitution for the preexisting indebtedness; and (3) were adequately secured by the secured note and guaranty. We agree with the plaintiffs that the court misconstrued the applicable statutes and documents and therefore improperly denied the plaintiffs' petition.

Our point of departure is the text of § 16-262f (a). That statute entitles a utility company to apply for a receivership "[u]pon default of the owner . . . of a residential dwelling who is billed directly . . . for utility service furnished to such building . . . ." The stat-

---

[3] DaSilva as executrix was the maker of a promissory note in the amount of $840,000; this note was secured by a mortgage deed and security agreement. DaSilva individually executed a personal guaranty of the note; this guaranty was also secured by a mortgage deed and security agreement.

ute requires an immediate judicial order "to show cause why a receiver should not be appointed," and a hearing, within seventy-two hours, whose "sole purpose . . . shall be to determine whether there is an amount due and owing between the owner and the . . . utility." That statute further directs the court to "make a determination of any amount due and owing and any amount so determined shall constitute a lien upon the real property of such owner."

"Section 16-262f permits public service companies to petition for a statutory rent receivership under limited circumstances that are statutorily linked to the [General Statutes] § 16-262e (a)[4] prohibition on the termination of utility services. Under § 16-262e (a), service may not be terminated: (1) to a residential dwelling; (2) despite nonpayment of a delinquent account;

[4] General Statutes § 16-262e provides in relevant part: "NOTICE FURNISHED TENANTS BY UTILITY RE INTENDED TERMINATION. ASSUMPTION BY TENANTS OF LIABILITY FOR FUTURE SERVICE. LIABILITY OF LANDLORDS FOR CERTAIN UTILITY SERVICES. DEDUCTION FROM RENT. (a) Notwithstanding the provisions of section 16-262d, wherever an owner, agent, lessor or manager of a residential dwelling is billed directly by an electric, gas, telephone or water public service company or by a municipal utility for utility service furnished to such building not occupied exclusively by such owner, agent, lessor, or manager, and such company or municipal utility has actual or constructive knowledge that the occupants of such dwelling are not the persons to whom the company or municipal utility usually sends its bills, such company or municipal utility shall not terminate such service for nonpayment of a delinquent account owed to such company or municipal utility by such owner, agent, lessor or manager unless: (1) Such company or municipal utility makes a good faith effort to notify the occupants of such building of the proposed termination by the means most practicable under the circumstances and best designed to provide actual notice; and (2) such company or municipal utility provides an opportunity, where practicable, for such occupants to receive service in their own names without any liability for the amount due while service was billed directly to the lessor, owner, agent or manager and without the necessity for a security deposit; provided, if it is not practicable for such occupants to receive service in their own names, the company or municipal utility shall not terminate service to such residential dwelling but may pursue the remedy provided in section 16-262f."

(3) for service billed directly to the residential building's lessor, owner, agent or manager; and (4) when it is impracticable for occupants of the building to receive service in their own name. Unable to terminate service to such a residential dwelling, public service companies are expressly instructed, by § 16-262e (a), to 'pursue the remedy provided in section 16-262f.' . . . The summary rent receivership proceedings authorized by § 16-262f constitute, as we have previously recognized, a statutory trade-off for the requirement of continued service imposed by § 16-262e (a). *Hartford Electric Light Co.* v. *Tucker,* 183 Conn. 85, 94, 438 A.2d 828, cert. denied, 454 U.S. 837, 102 S. Ct. 143, 70 L. Ed. 2d 118 (1981)." *Southern Connecticut Gas Co.* v. *Housing Authority,* 191 Conn. 514, 518–20, 468 A.2d 574 (1983). The statutory proceedings authorized by § 16-262f are sui generis. Id., 520.

In light of the language, the acknowledged purpose and the sui generis nature of § 16-262f, the trial court was mistaken in its assumption that the appointment of a rent receiver for the protection of a utility is governed by the same wide-ranging equitable and discretionary principles that govern rent receiverships in ordinary mortgage foreclosure proceedings. See, e.g., *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 175, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). Once the plaintiffs presented factual evidence to establish a default in utility payments with respect to residential property, they were entitled to the appointment of a rent receiver without having to demonstrate any further equitable right such as a threat of waste or loss. The trial court, in light of its own findings in the companion foreclosure proceedings, was also mistaken in its conclusion that the plaintiffs had adequate security to collect the amounts that were in default because of their ability to avail themselves of the defendants' note, guaranty and mortgages.

We recognize that, even when a default has been incontrovertibly established, extraordinary circumstances may warrant a withholding of judicial relief. The defendants in this case have failed, however, to satisfy their burden of demonstrating the existence of any such extraordinary circumstance.

The defendants contend, as the trial court concluded, that the plaintiffs irrevocably elected not to pursue the remedy otherwise afforded them by § 16-262f. The trial court decided that an election of remedies flowed from the plaintiff's agreement to accept the secured promissory note and guaranty from the defendants in the first place. On appeal, without pursuing that claim, the defendants argue that an election of remedies flowed from the plaintiffs' institution of proceedings to obtain a judgment of default on the note and the guaranty and to foreclose on the correlative mortgages executed as security for the note and the guaranty. We disagree that the plaintiffs are barred from pursuing a utility rent receivership under § 16-262f in the circumstances of this case.

When the plaintiffs initially agreed to accept a note and a guaranty, and two mortgages as security for these monetary obligations, which were intended to enable the defendants to work out their preexisting arrearages for utility bills, the plaintiffs arguably bound themselves not to pursue these arrearages so long as the instruments were not in default. Unless otherwise agreed, if a promissory note is taken for a preexisting obligation, the obligation is ordinarily suspended "until dishonor of the note or until it is paid." General Statutes § 42a-3-310 (b) (2).[5] We need not determine, however, whether the parties in this case had "otherwise

---

[5] General Statutes § 42a-3-310 provides in relevant part: "EFFECT OF INSTRUMENT ON OBLIGATION FOR WHICH TAKEN. . . .

"(b) Unless otherwise agreed and except as provided in subsection (a), if a note or an uncertified check is taken for an obligation, the obligation

agreed," because, as the trial court found, the defendants had defaulted on the note and the guaranty at the time when the plaintiffs initiated their § 16-262f application.

After the defendants' default, the plaintiffs' rights to pursue their statutory entitlement to a rent receivership were fully protected both by the terms of the agreement between the parties and by § 16-262f. The parties expressly agreed that the plaintiffs' remedies, in the event of default, were "cumulative" and that the plaintiffs had retained their rights "to resort to every other right or remedy available at law or in equity."[6] The

---

is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply . . .

"(2) In the case of a note, suspension of the obligation continues until dishonor of the note or until it is paid. Payment of the note results in discharge of the obligation to the extent of the payment."

[6] Each open-ended mortgage deed and security agreement provides: "G. Remedies Cumulative. The rights and remedies of the Mortgagees herein provided are cumulative and the holder of the [Note or Guaranty] and of every other obligation secured hereby may recover judgment thereon, issue execution therefor, and resort to every other right or remedy available at law or in equity, without first exhausting and without affecting or impairing the security or any right or remedy afforded by this Mortgage, and no enumerated or special rights or powers herein shall be construed to limit in any manner any grant of general rights or powers or take away or limit any and all rights of Mortgagees under the laws of the State of Connecticut."

The trial court surmised that these provisions might be unenforceable because they were "not amenable to bargaining" and therefore might constitute "adhesion contract(s)." The court acknowledged that the defendants had offered no such argument at trial. The defendants similarly have offered no such argument on appeal. In Hamm v. Taylor, 180 Conn. 491, 494–95, 429 A.2d 946 (1980), we held that "[b]efore a court strikes down as unconscionable the terms of a note that the legislature has deemed not to be illegal . . . the court should permit a factual showing of the circumstances that led to the inclusion of the challenged terms in the note or mortgage." (Citation omitted.) The trial court in this case, therefore, lacked either a legal or a factual basis for its surmise.

terms of their agreement are entirely consistent with § 16-262f (c),[7] which counsels against any election of remedies.

The plaintiffs' initiation of default and foreclosure proceedings on the note and guaranty and the mortgages securing these instruments did not abrogate their contractual and statutory rights. Under the law of negotiable instruments, a dishonored instrument is not "paid" in the absence of an act or agreement that "would discharge an obligation to pay money under a simple contract." See General Statutes § 42a-3-601.[8] Under governing principles of contract law, a party who manifests the choice of one available remedy among others "by bringing suit or otherwise" has not barred his right to pursue any other remedy "unless the remedies are inconsistent and the other party materially changes his position in reliance on the manifestation." 3 Restatement (Second), Contracts § 378 (1981).[9] As these authorities recognize, the essence of "payment" is the actual collection of moneys owed, not the pursuit of remedies to accomplish their collection. In the absence of a discharge on grounds such as bankruptcy, an unpaid default judgment does not automatically discharge an indebtedness.

---

[7] General Statutes § 16-262f (c) provides: "Nothing in this section shall be construed to prevent the petitioner from pursuing any other action or remedy at law or equity that it may have against the owner, agent, lessor or manager."

[8] General Statutes § 42a-3-601 provides in relevant part: "DISCHARGE AND EFFECT OF DISCHARGE. (a) The obligation of a party to pay the instrument is discharged as stated in this article or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract."

[9] Section 378 of the Restatement (Second) of Contracts provides: "ELECTION AMONG REMEDIES

"If a party has more than one remedy under the rules stated in this Chapter, his manifestation of a choice of one of them by bringing suit or otherwise is not a bar to another remedy unless the remedies are inconsistent and the other party materially changes his position in reliance on the manifestation."

The defendants argue, however, that they have been materially disadvantaged by the plaintiffs' pursuit of default and foreclosure proceedings because of the defendants' continued liability as parties to a negotiable instrument. They suggest that the plaintiffs "could obtain a default in the foreclosure, and then assign the note to a third party, who could collect on it, while the plaintiffs collected on their receivership under . . . § 16-262f." The defendants' argument assumes that a person who takes a negotiable instrument after its maturity and default could collect on the instrument, as a holder in due course thereof, without regard to any defenses of whole or partial payment. The defendants are mistaken. Under General Statutes § 42a-3-302 (a) (2) (iii),[10] a holder cannot be "in due course" unless the holder takes the instrument "without notice that the instrument is overdue or has been dishonored . . . ." Under General Statutes § 42a-3-304 (b) (2),[11] an instrument "payable at a definite time" becomes "overdue on the day after the due date." Because the promissory note in this case bore a due date of January 31, 1993, it gave notice on its face that it had become "overdue" on February 1,

---

[10] General Statutes § 42a-3-302 provides in relevant part: "HOLDER IN DUE COURSE. (a) Subject to subsection (c) and section 42a-3-106 (d), 'holder in due course' means the holder of an instrument if . . .

"(2) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 42a-3-306, and (vi) without notice that any party has a defense or claim in recoupment described in section 42a-3-305 (a)."

[11] General Statutes § 42a-3-304 provides in relevant part: "OVERDUE INSTRUMENT. . . .

"(b) With respect to an instrument payable at a definite time the following rules apply . . .

"(2) If the principal is not payable in instalments and the due date has not been accelerated, the instrument becomes overdue on the day after the due date."

1993. By the time of these proceedings, therefore, the note could no longer be negotiated to a holder in due course. Under General Statutes § 42a-3-305 (a) (2),[12] enforcement of the instrument by any taker other than a holder in due course would preserve for the obligor on the instrument any "defense . . . that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract."

The protracted proceedings in this case failed to accord with the letter or the spirit of § 16-262f. The plaintiffs clearly established their right to a rent receivership. On remand, the trial court should promptly designate a rent receiver and determine the amount of the utility charges due and owing from the defendants to the plaintiffs.

The judgment is reversed and the trial court is directed to conduct a prompt hearing in accordance with this opinion.

In this opinion the other justices concurred.

---

[12] General Statutes § 42a-3-305 provides in relevant part: "DEFENSES AND CLAIMS IN RECOUPMENT. (a) Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following . . .

"(2) A defense of the obligor stated in another section of this article or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract . . . ."