[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PETITION FOR RECEIVER OF RENTS
Pursuant to a September 5, 1997, petition, plaintiff Connecticut Natural Gas Corporation (CNG) seeks the appointment CT Page 10612 of a receiver of rents. Petitioner relies upon General Statutes Section 16-262f in support of its application.[1] The respondent, Christa L. Appletree, objects to the application.
A hearing on this matter was held on October 6, 1997. One witness, M. Carmen Branciforte, a CNG credit supervisor, testified on behalf of the petitioner. Ms. Branciforte's testimony — and her affidavit, admitted without objection as Plaintiff's Exhibit 1 at the hearing — established that the books and records relative to this matter indicate that petitioner furnishes natural gas service to residential dwellings located at 20 Lorraine Street in Hartford; that said premises are not occupied exclusively by the owner, agent, lessor or manager but continue to have occupants making rental payments to respondent; that the natural gas services to said premises are not furnished on an individually metered or billed basis but are furnished through one or more master meters; that the petitioner's charges for natural gas service are billed directly to Lorraine Associates; that respondent has refused or neglected to pay said charges and is "in default" in payment for said charges; and that respondent is indebted to petitioner in an amount of $4,216.18. Ms. Branciforte also testified that respondent's account has not been current since 1995. She further testified that in the last five to six months, payments have been made and the balance has been paid down to a lower amount.
Christa L. Appletree testified. On direct examination, she denied that she was "in default." She testified that circumstances beyond her control, including the fact that the building at 20 Lorraine Street had been taken over by a gang, had caused her financial problems and that she had done all she could to make timely payments. On cross-examination, she conceded that she owed the $4,216.18 claimed and had owed CNG sums for a substantial period of time. She indicated that she received rental income of over $1,900 per month from the building. She denied that she ever "intended" not to pay what was owed. Respondent did not produce any evidence to show that a formal payment plan had been established to eliminate the arrearage.
Following the hearing, counsel for the respondent argued that respondent was not "in default" as the term is used in Section16-262f because, in recent months, payments had been made in an attempt to lower the longstanding arrearage. The Court then ordered the submission of briefs on the issue of CNG had carried its burden at the hearing, and whether respondent was "in CT Page 10613 default" in light of the evidence.
Respondent submitted an October 8, 1997, letter to the court, citing no cases or authorities in support of the argument that respondent was not "in default" or in support of the argument that Section 16-262f required CNG to show that respondent "intended" to be in default. CNG responded with a Memorandum in Opposition dated October 17, 1997. CNG's memorandum argues, among other things, that there is no "intent" requirement under §16-262f and that to impose such a requirement would eviscerate the letter and spirit of the statute, which provides for summary proceedings. See Connecticut Natural Gas Corp. v. Miller,239 Conn. 313, 319 (1996).
Having considered this matter, I conclude that the clear language of the statute and the controlling caselaw require that the application for appointment of a receiver of rents be granted.
In the case of Connecticut Light Power Co. v. DaSilva,231 Conn. 441 (1994), then Chief Justice Peters discussed Section16-262f at length. She wrote:
 The dispositive issue in this case is whether a trial court has discretion to deny a petition for a utility rent receivership with respect to multi-family residential property once the utility company has established that the owner or lessor of the property is currently in default in the payment of utility charges. . . .
 Our point of departure is the text of § 16-262f(a). That statute entitles a utility company to apply for a receivership "[u]pon default of the owner . . . of a residential dwelling who is billed directly . . . for utility service furnished to such building . . . ." The statute requires an immediate judicial order "to show cause why a receiver should not be appointed," and a hearing, within seventy-two hours, whose "sole purpose . . . shall be to determine whether there is an amount due and owing between the owner and the . . . utility." That statute further directs the court to "make a determination of any amount due and owing and any amount so determined shall constitute a CT Page 10614 lien upon the real property of such owner." . .
 The summary rent receivership proceedings authorized by § 16-262f constitute, as we have previously recognized, a statutory trade-off for the requirement of continued service imposed by § 16-262e(a). Hartford Electric Light Co. v. Tucker, 183 Conn. 85, 94, 438 A.2d 828, cert. denied, 454 U.S. 837, 102 S.Ct. 143, 70 L.Ed.2d 118 (1981)." Southern Connecticut Gas Co. v. Housing Authority, 191 Conn. 514, 518-20, 468 A.2d 574 (1983). The statutory proceedings authorized by § 16-262f are sui generis. Id., 520. . .
 In light of the language, the acknowledged purpose and the sui generis nature of § 16-262f, the trial court was mistaken in its assumption that the appointment of a rent receiver for the protection of a utility is governed by the same wide-ranging equitable and discretionary principles that govern rent receiverships in ordinary mortgage foreclosure proceedings. See, e.g., Hartford Federal Savings Loan Assn. v. Tucker, 196 Conn. 172, 175, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985). Once the plaintiffs presented factual evidence to establish a default in utility payments with respect to residential property, they were entitled to the appointment of a rent receiver without having to demonstrate any further equitable right such as a threat of waste or loss. . . .
 We recognize that, even when a default has been incontrovertibly established, extraordinary circumstances may warrant a withholding of judicial relief. The defendants in this case have failed, however, to satisfy their burden of demonstrating the existence of any such extraordinary circumstance. . . .
Additionally, the issue of what it means to be "in default" under Section 262f was considered by Judge Walsh in the case ofMetropolitan District v. Pizzoferrato, judicial district of CT Page 10615 Hartford/New Britain at Hartford, No. CV 92-0703351-S 9 CONN. L. RPTR. 223 (June 11, 1997.) His discussion is worth quoting at some length, as follows:
 In order to find whether Section 16-262f is applicable to this case, the Court must determine whether the Respondent is in "default." What does "default" mean in the context of Section 16-262f?
 The Court has examined the legislative history of this statute in an effort to ascertain the meaning of "default", and therefore the intent of the legislature. During discussion of the bill on May 22, 1975, Representative Gerald Stevens asked Representative Samuel Gejdenson what ""default" modifies?" Mr. Gejdenson answered "I believe "default" means failure to pay the bill." Mr. Gejdenson also said to Mr. Stevens "and also I might recommend that he look at Webster." See Conn. General Assembly 18 H.R. Proc., Pt. 9, at 4353, 4354 (May 21, 1975).
 Webster's New International Dictionary, Second Edition, defines "default" as "Failure to do what is required by duty or law."
 Our Conn. Supreme Court has defined "default" as follows:
 "A default is an "omission of that which ought to be done," or alternatively, "neglect or failure of any party to take step[s] required of him in [the] progress of [a] cause." Black's Law Dictionary (4th Ed.)."
 Steve Viglione Sheet Metal Co. v. Sakonchick, 190 Conn. 707, 710 note 4, (1983).
Black's also states that "More specifically, it is an omission or failure to perform a legal or contractual duty. . . . to observe a promise or discharge an obligation."
 Default is defined in the treatise "Words and Phrases" as "a nonpayment without the consent of the obligee." 11A Words and Phrases, 1971 (Suppl. 1992). CT Page 10616
I agree with and adopt Judge Walsh's logic and conclusion. In this case, it is clear that, notwithstanding recent, apparent good faith efforts to eliminate the arrearage, respondent has been, and remains, "in default" because respondent has failed to pay amounts owing to CNG without CNG's consent for a considerable period of time. There is no "intent" requirement under Section16-262f, and the Court declines respondent's invitation to read one into the statute. Nor does the record suggest the presence of "extraordinary circumstances" of the sort that would justify a different result, notwithstanding the problems respondent has described.[2]
The Court is not unsympathetic to respondent's situation. But given the factual circumstances of this case, the clear and unambiguous intention of the legislature as expressed in the statute, and the teaching of the DaSilva case, the conclusion is clear that petitioner has proven the elements necessary to support the appointment of a receiver of rents and that a receiver must be appointed.
The Court therefore finds that respondent is in default in the amount of $4,216.18 as of September 26, 1997, as CNG alleges, and that the amount of $4,451.98, including $185.00 for court costs and sheriff's fees of $50.80 is due and owing; that an appointment of a receiver of rents is required under Section 262f; and that a bond in the amount of $2,000 is in order. The undersigned judge has signed the draft orders submitted by CNG to that effect.
Douglas S. Lavine Judge, Superior Court