******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., with whom EVELEIGH, J., joins, concurring in part and dissenting in part. I agree with the majority that General Statutes § 12-163a (a) authorizes a court-appointed receiver of rents to use legal process to collect rents or payments for use and occupancy[1] allegedly due prior to the date of the receiver's appointment (past due rents) for any property for which the owner is delinquent in the payment of real property taxes to the municipality. I also agree with the majority that § 12-163a (a) does not confer authority on the receiver to lease the premises to a new tenant in the event a tenant is evicted or otherwise vacates the premises. I disagree, however, that the receiver cannot commence an eviction proceeding against a tenant for the nonpayment of rent. In my view, the only construction of the statute that makes any sense and that also is consistent with the majority's construction of the same statutory language with respect to the collection of past due rents is that the receiver may commence an eviction proceeding against a nonpaying tenant. Accordingly, I respectfully dissent from that part of the majority opinion concluding to the contrary.

It is well established that, "[w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Footnote omitted; internal quotation marks omitted.) *State* v. *Heredia*, 310 Conn. 742, 755–56, 81 A.3d 1163 (2013).

Section 12-163a (a) provides in relevant part: "The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner, agent, lessor or manager. . . ." In constru-

ing this language to determine whether a receiver may collect past due rents, as well as rents that become due after the receiver's appointment, the majority determines that "the more logical and compelling construction is [a] broader reading of the statute," even though in other receivership schemes "the legislature used terms that more plainly include past due rent." The majority also relies on the dictionary definition of certain words and observes that § 12-163a (a), in referring to the fact that the receiver may collect rent "in place of the owner," does not indicate or limit "the means by which the receiver may do so. As such, it seems reasonable to infer that the statute authorizes the receiver to use the legal means that otherwise would have been available to the owner to collect such unpaid obligations." Text accompanying footnote 4 of the majority opinion.

Applying this same analysis to the question of whether the receiver may commence an eviction proceeding to enforce the collection of rents due from a nonpaying tenant, I agree with the majority's observation that "the more logical and compelling construction is [a] broader reading of the statute." Accordingly, although the statute does not explicitly define the scope of the receiver's authority to "collect" rents due, I agree with the majority that the term may be read in conjunction with other language in the statute and in accordance with its dictionary definition to determine its most logical meaning.

Following this approach, I begin by noting that the statute refers to the collection of "all rents or payments for use and occupancy . . . ." General Statutes § 12-163a (a). As the majority has acknowledged, use and occupancy payments arise after a notice to quit has been served on a tenant. See *Waterbury Twin, LLC* v. *Renal Treatment Centers–Northeast, Inc.*, 292 Conn. 459, 473 n.18, 974 A.2d 626 (2009). The statute thus contemplates that a receiver may collect payments arising out of an eviction proceeding. Although this does not fully answer the question of whether the receiver may commence the eviction proceeding from which such payments arise, it does suggest that there may be room for such an interpretation under the broad reading of the statute that the majority has employed to resolve the issue of whether a receiver has authority to collect past due rents.

Turning next to the dictionary for guidance, as suggested by the majority, the term "collect," in the legal sense contemplated by the statute, means "to obtain payment or liquidation of [the claim or debt], either by personal solicitation or legal proceedings." Black's Law Dictionary (6th Ed. 1990) p. 263. This definition lends support to a reading of the statute that contemplates the collection of rents due by way of an eviction proceeding against the tenant.

I also rely on the majority's observation that language

in § 12-163a (a) providing that the receiver may collect rents "in place of the owner" does not indicate or limit "the means by which the receiver may do so" but, rather, supports the inference that the receiver may "use the legal means that otherwise would have been available to the owner to collect such unpaid obligations." Text accompanying footnote 4 of the majority opinion. One of the most obvious legal means available to an owner for collecting unpaid rents is the threat of an eviction proceeding. Accordingly, the statutory language referring to the receiver's authority to collect rents "in place of the owner" supports the view that the receiver may commence an eviction proceeding in furtherance of that goal, just as the majority has concluded that a broad reading of the statute permits the receiver to collect past due rents.

Like the majority, I recognize that other receivership schemes define the receiver's powers more specifically in this respect. See General Statutes § 42-110f (receiver shall have power to take property into possession and "sell, convey, and assign the same"); General Statutes § 52-505 (b) (receiver shall be vested with property and manage and use such property for benefit and support of members of certain associations, communities or corporations); General Statutes § 52-509 (a) (receiver "to hold the business and all of the property, both real and personal, belonging to the partnership"). When the majority observes, however, that other receivership statutes also are more specific than § 12-163a (a) in allowing receivers to collect past due rents; see General Statutes § 47a-14d (b) (1) ("the rents due on the date of entry of . . . judgment and rents to become due subsequent thereto from all occupying such property [are to] be deposited with a receiver"); General Statutes § 47a-56d (c) ("[t]he receiver shall collect the accrued and accruing rents"); it brushes this distinction aside and concludes that, "[n]onetheless, we are persuaded that the use of the term 'all rents' [in § 12-163a (a)] effectively conveys the same substance." I similarly conclude that, under a broad reading of the statute, the receiver may commence an eviction proceeding in the unusual circumstance in which a tenant is not paying rent. The statute's explicit references to "payments for use and occupancy," which arise out of eviction proceedings, and to the fact that the receiver acts "in place of the owner," effectively convey the notion that the receiver may commence an eviction proceeding to obtain rents due from a nonpaying tenant.

The majority neglects to consider the "basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be con-

strued, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *Fairchild Heights, Inc.* v. *Dickal,* 305 Conn. 488, 500, 45 A.3d 627 (2012). The majority's interpretation would contravene this principle because a receiver would have no recourse if the tenant should refuse to pay the rents that are due, as in the present case. In other words, the statute would be rendered meaningless, and the receiver would become what the plaintiff, the town of Canton, has described as "a toothless lion, able to roar, but not bite."

The majority contends that it would make no sense to construe the statute as permitting a receiver to evict a nonpaying tenant because the power to evict allows the receiver only to take possession of the property, and, consequently, an eviction would be effective only if combined with the power to lease the property to a new tenant from whom the rent could be collected. I disagree for two reasons. First, the threat of eviction very likely would give the tenant a strong incentive to comply with the receiver's order and pay the rent, thereby avoiding the potentially expensive and time-consuming option of relocating to another property that would require an equivalent or higher rent. Second, even if an eviction results in nothing more than dispossession, it will have removed, at the very least, a tenant whose activities on the property require municipal services for which neither the property owner nor the tenant is paying. Accordingly, evicting a tenant without leasing the property to a new tenant would have two positive effects. The threat of eviction would serve as an incentive for the tenant to pay the rents that are due, and, should an eviction occur, the municipality would be in a slightly better position because of the reduced demand for public services such as fire, police and traffic control in that location. It is thus not true that eviction, standing alone, has no benefits.

Finally, although the majority notes that § 12-163a (a) is modeled after General Statutes § 16-262f; see text accompanying footnote 6 of the majority opinion; this court's statement in *Connecticut Light & Power Co.* v. *DaSilva,* 231 Conn. 441, 446, 650 A.2d 551 (1994), that "the appointment of a rent receiver for the protection of a utility is [not] governed by the same wide-ranging equitable and discretionary principles that govern rent receiverships in ordinary mortgage foreclosure proceedings," does not limit the construction of § 12-163a (a). Representative Robert D. Godfrey, a cosponsor of the bill that subsequently was enacted as § 12-163a, explained that the bill "gives municipalities the same kind of power we currently give [in § 16-262f (a) (1)] to utilities, which can petition for receivership of rent for back payment of electric, water, power"; Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 1, 1995 Sess., p. 50; but his statement merely refers to the identical powers of utility companies and

municipalities to *petition* for a receivership and indicates nothing about the scope of that power in the two different contexts.

This is an important distinction because a close reading of *Connecticut Light & Power Co.* reveals that the authority granted to a receiver under § 16-262f (a), unlike the authority granted to a receiver under § 12-163a (a), is subject to the unique constraints imposed by the statutory scheme that governs the conduct of public utility companies. As the court explained: "*Section 16-262f permits public service companies to petition for a statutory rent receivership under limited circumstances that are statutorily linked to the [General Statutes] § 16-262e (a) prohibition on the termination of utility services.* Under § 16-262e (a), service may not be terminated: (1) to a residential dwelling; (2) despite nonpayment of a delinquent account; (3) for service billed directly to the residential building's lessor, owner, agent or manager; and (4) when it is impracticable for occupants of the building to receive service in their own name. Unable to terminate service to such a residential dwelling, public service companies are expressly instructed, by § 16-262e (a), to pursue the remedy provided in [§] 16-262f. . . . *The summary rent receivership proceedings authorized by § 16-262f constitute, as we have previously recognized, a statutory trade-off for the requirement of continued service imposed by § 16-262e (a). . . . The statutory proceedings authorized by § 16-262f are sui generis. . . .*

"In light of the language, the acknowledged purpose and the sui generis nature of § 16-262f, the trial court was mistaken in its assumption that the appointment of a rent receiver for the protection of a utility is governed by the same wide-ranging equitable and discretionary principles that govern rent receiverships in ordinary mortgage foreclosure proceedings." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *DaSilva*, supra, 231 Conn. 445–46.

A utility company's termination of services to the tenants of a building for the landlord's nonpayment of a delinquent account is the equivalent of an eviction proceeding for the nonpayment of taxes to a municipality. The legislature has determined, however, that the receiver for a utility company cannot terminate services to the tenants of a building except in certain, limited circumstances. Accordingly, this court's discussion of the scope of a receiver's authority under § 16-262f (a) in *Connecticut Light & Power Co.* is inapplicable to a receiver's authority under § 12-163a (a), which imposes no similar limitations or constraints.

In sum, I believe all of the foregoing considerations compel the conclusion that among the legal tools available to a receiver under § 12-163a (a) for the collection of rents due is the authority to commence an eviction

proceeding against a nonpaying tenant. This conclusion is based on a consideration of the same factors the majority considers in deciding that a receiver may collect past due rents. For reasons I cannot fathom, the majority nonetheless rejects this approach in deciding that a receiver has no authority under the statute to commence an eviction proceeding. Thus, the majority does not favor a broad reading of the term "collect" in § 12-163a (a), does not examine the legal meaning of that term, does not infer from the provision allowing the receiver to collect rent "in place of the owner" that the receiver may "use the legal means that otherwise would have been available to the owner to collect such unpaid obligations"; text accompanying footnote 4 of the majority opinion; and, remarkably, *relies* on the fact that other receivership statutes are more specific in defining the scope of a receiver's collection powers in concluding that the authority conferred under § 12-163a (a) is "quite narrow . . . ." Such a glaring inconsistency in the majority's resolution of these two different issues is, in my view, unsupportable. Accordingly, I respectfully dissent from that portion of the majority's opinion.

[1] Unless otherwise noted, all future references to "rent" or "rents" include "payments for use and occupancy."