## CONNECTICUT NATURAL GAS CORPORATION *v.*
## RONALD M. MILLER ET AL.
## (15474)

Callahan, C. J., and Berdon, Norcott, McDonald and Peters, Js.

Argued October 2—officially released November 26, 1996

*Richard P. Weinstein*, with whom, on the brief, were *Peter B. Rustin* and *Nathan A. Schatz*, for the appellants (defendants).

*Claudia J. Triggs*, for the appellee (plaintiff).

PETERS, J. The sole issue in this appeal is whether, at a summary proceeding brought under General Statutes § 16-262f[1] for the appointment of a receiver of rents,

---

[1] General Statutes § 16-262f provides in relevant part: "Petition for receiver of rents; hearing; appointment; duties. Termination of receivership. Liens. Nonexclusivity of remedy. Contempt. (a) Upon default of the owner, agent, lessor or manager of a residential dwelling who is billed directly by an electric, gas, telephone or water company or by a municipal utility for utility service furnished to such building, such company or municipal utility may

the defendants have a constitutional right, as a matter of procedural due process, to litigate fully their counter-

petition the superior court or a judge thereof, for appointment of a receiver of the rents or payments for use and occupancy for any dwelling for which the owner, agent, lessor or manager is in default. The court or judge shall forthwith issue an order to show cause why a receiver should not be appointed, which shall be served upon the owner, agent, lessor or manager or his agent in a manner most reasonably calculated to give notice to such owner, agent, lessor or manager as determined by such court or judge, including, but not limited to, a posting of such order on the premises in question. A hearing shall be had on such order no later than seventy-two hours after its issuance or the first court day thereafter. The sole purpose of such a hearing shall be to determine whether there is an amount due and owing between the owner, agent, lessor or manager and the company or municipal utility. The court shall make a determination of any amount due and owing and any amount so determined shall constitute a lien upon the real property of such owner. A certificate of such amount may be recorded in the land records of the town in which such property is located describing the amount of the lien and the name of the party in default. When the amount due and owing has been paid the company or municipality shall issue a certificate discharging the lien and shall file the certificate in the land records of the town in which such lien was recorded. The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner, agent, lessor or manager. The receiver shall pay the petitioner or other supplier, from such rents or payments for use and occupancy, for electric, gas, telephone, water or heating oil supplied on and after the date of his appointment. The owner, agent, lessor or manager shall be liable for such reasonable fees and costs determined by the court to be due the receiver, which fees and costs may be recovered from the rents or payments for use and occupancy under the control of the receiver, provided no such fees or costs shall be recovered until after payment for current electric, gas, telephone and water service and heating oil deliveries has been made. The owner, agent, lessor or manager shall be liable to the petitioner for reasonable attorney's fees and costs incurred by the petitioner, provided no such fees or costs shall be recovered until after payment for current electric, gas, telephone and water service and heating oil deliveries has been made and after payments of reasonable fees and costs to the receiver. Any moneys from rental payments or payments for use and occupancy remaining after payment for current electric, gas, telephone and water service or heating oil deliveries, and after payment for reasonable costs and fees to the receiver, and after payment to the petitioner for reasonable attorney's fees and costs, shall be applied to any arrearage found by the court to be due and owing the company or municipal utility from the owner, agent, lessor or manager for service provided such building. Any moneys remaining thereafter shall be turned over to the owner, agent, lessor or manager. The court may order an accounting to be made at such times as it determines to be just, reasonable, and necessary. . . ."

claims against the plaintiff. The plaintiff, Connecticut Natural Gas Corporation, filed a petition for an order to show cause for the appointment of a receiver of rents for an apartment building owned by the defendants, Ronald and Karen Miller. After a summary hearing pursuant to § 16-262f, the trial court granted the plaintiff's petition, appointed a receiver of rents and entered a lien against the defendants' property in the amount of the defendants' unpaid utility charges. The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the trial court's judgment.

The following facts are relevant to this appeal. The defendants owned a multiunit apartment building in Hartford for which the plaintiff supplied gas and gas heating system services. The defendants paid for the gas on a "master meter basis" pursuant to which the plaintiff billed them directly for the entire amount of gas used by the individual apartment units. In October, 1995, after the defendants had fallen into arrears on their account with the plaintiff, the plaintiff petitioned for the appointment of a receiver of rents for the defendants' property. At the receivership hearing, the plaintiff's credit supervisor testified that the defendants had an outstanding balance of $8073.29 on their gas account.

Also at the receivership hearing, the defendants sought to establish that, between early 1994 and late 1995, they had had numerous problems with their gas heating system. On cross-examination, the credit supervisor acknowledged that these problems had necessitated repeated visits by the plaintiff's repair technicians and, on more than one occasion, had forced the plaintiff to shut down the system. Ronald Miller testified that these system malfunctions had substantially inconvenienced his tenants and had resulted in $2700 in repair

charges. He also testified that, as a result of the malfunctions and the corresponding repair visits, a dispute had arisen between the defendants and the plaintiff with respect to the amount properly owing on the gas bill.

At the close of the hearing, the defendants argued that the summary nature of the § 16-262f proceeding prevented them from fully challenging the appointment of a receiver of rents and, therefore, violated their rights to procedural due process. They claimed that, because they had been unable to conduct prehearing discovery or to inspect the plaintiff's repair records in advance of the hearing, they were prevented from presenting expert testimony to prove that the plaintiff had repaired the gas heating system in a negligent fashion. The defendants argued that, thus deprived of a "meaningful hearing at a meaningful time," they should not be required to surrender to a receiver their property rights in the apartment rentals.

Having heard only the limited testimony that the defendants had presented, the trial court determined that it could make no finding regarding liability for the gas system repairs.[2] The trial court did suggest, however, that at a fully litigated hearing, the defendants might have succeeded in demonstrating the plaintiff's misfeasance. Accordingly, the trial court ordered the defendants either to pay the full amount owing on the utility bill or to post a bond in that amount pending the resolution of their counterclaims against the plaintiff.

Rather than litigate the merits of their counterclaims, however, the defendants brought the present appeal. They renew in this court their constitutional challenges, contending that § 16-262f violates their state and federal rights to procedural due process.[3] They claim that the

---

[2] The trial court did not address the merits of the defendants' constitutional arguments.

[3] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

appointment of a receiver of rents under § 16-262f represents a final and binding determination of the amount owing on the gas account, a determination they cannot meaningfully challenge because of the summary nature of the receivership proceedings. We conclude, however, that the determination of the amount owing at a § 16-262f proceeding does not preclude the defendants from fully litigating whatever counterclaims they may have against the plaintiff at a later time and in a separate forum. We hold, therefore, that the § 16-262f hearing does not impinge on the defendants' rights to procedural due process.

Proper analysis of the defendants' claims requires us first to consider § 16-262f and its function in the surrounding statutory scheme. "Under § 16-262f [a], a public service company may seek appointment of a receiver of the rents upon the 'default of the owner, agent, lessor or manager of a residential dwelling who is billed directly . . . for utility service furnished to such building . . . .' The section requires an immediate judicial order 'to show cause why a receiver should not be appointed,' and a prompt hearing [within seventy-two hours], whose 'sole purpose . . . shall be to determine whether there is [an amount] due and owing between the owner, agent, lessor, or manager and the

The constitution of Connecticut, article first, § 8, provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

Although the defendants pursue their due process claims under both the federal and the state constitutions, they do not suggest that, in the context of this case, the scope of their claims is any wider under the state constitution than it is under the federal constitution. Accordingly, we do not independently address the defendants' state constitutional claims. See *State* v. *Lopez*, 235 Conn. 487, 489 n.1, 668 A.2d 360 (1995); see also *State* v. *Flanders*, 214 Conn. 493, 500 n.4, 572 A.2d 983, cert. denied, 498 U.S. 901, 111 S. Ct. 260, 112 L. Ed. 2d 217 (1990) ("[d]ue process claims under the federal and *state constitutions can be treated together because they impose similar constitutional limitations*").

. . . utility.' " *Southern Connecticut Gas Co.* v. *Housing Authority*, 191 Conn. 514, 519, 468 A.2d 574 (1983).

We have recognized that § 16-262f is "statutorily linked to the [General Statutes] § 16-262e (a)[4] prohibition on the termination of utility services. Under § 16-262e (a), [a utility company may not terminate service]: (1) to a residential dwelling; (2) despite nonpayment of a delinquent account; (3) for service billed directly to the residential building's lessor, owner, agent or manager; and (4) when it is impracticable for occupants of the building to receive service in their own name. Unable to terminate service to such a residential dwelling, public service companies are expressly instructed, by § 16-262e (a), to 'pursue the remedy provided in section 16-262f.' " *Southern Connecticut Gas Co.* v. *Housing Authority*, supra, 191 Conn. 518–19; see also *Connecticut Light & Power Co.* v. *DaSilva*, 231 Conn. 441, 445–56, 650 A.2d 551 (1994).

---

[4] General Statutes § 16-262e provides in relevant part: "Notice furnished tenants by utility re intended termination. Assumption by tenants of liability for future service. Liability of landlords for certain utility services. Deduction from rent. (a) Notwithstanding the provisions of section 16-262d, wherever an owner, agent, lessor or manager of a residential dwelling is billed directly by an electric, gas, telephone or water public service company or by a municipal utility for utility service furnished to such building not occupied exclusively by such owner, agent, lessor, or manager, and such company or municipal utility has actual or constructive knowledge that the occupants of such dwelling are not the persons to whom the company or municipal utility usually sends its bills, such company or municipal utility shall not terminate such service for nonpayment of a delinquent account owed to such company or municipal utility by such owner, agent, lessor or manager unless: (1) Such company or municipal utility makes a good faith effort to notify the occupants of such building of the proposed termination by the means most practicable under the circumstances and best designed to provide actual notice; and (2) such company or municipal utility provides an opportunity, where practicable, for such occupants to receive service in their own names without any liability for the amount due while service was billed directly to the lessor, owner, agent or manager and without the necessity for a security deposit; *provided, if it is not practicable for such occupants to receive service in their own names, the company or municipal utility shall not terminate service to such residential dwelling but may pursue the remedy provided in section 16-262f.*" (Emphasis added.)

We have previously identified the "statutory tradeoff" between the burden imposed on utility companies to provide continued services to protected tenants under § 16-262e (a) and the prompt mechanism for collecting unpaid utility charges made available to these utility companies under § 16-262f. See *Southern Connecticut Gas Co.* v. *Housing Authority*, supra, 191 Conn. 519; *Hartford Electric Light Co.* v. *Tucker*, 183 Conn. 85, 94, 438 A.2d 828, cert. denied, 454 U.S. 837, 102 S. Ct. 143, 70 L. Ed. 2d 118 (1981); see also 18 H.R. Proc., Pt. 9, 1975 Sess., p. 4346, remarks of Representative Samuel Gejdenson. The summary nature of a receivership proceeding ensures that utility companies will not be forced to render uncompensated services over the course of lengthy litigation. We have observed, therefore, that a protracted receivership hearing "fail[s] to accord with the letter or the spirit of § 16-262f." *Connecticut Light & Power Co.* v. *DaSilva*, supra, 231 Conn. 451.

Mindful of the function served by § 16-262f in this statutory scheme, we turn to the defendants' constitutional claims. The defendants contend that § 16-262f violates their rights to procedural due process, both on its face and as applied to the facts of their case. With regard to their first claim, we have, on more than one occasion, affirmed the facial validity of this statute; see *Southern Connecticut Gas Co.* v. *Housing Authority*, supra, 191 Conn. 523 (holding that "legislature may constitutionally provide for a receivership proceeding that is short, concise, peremptory and immediate" [internal quotation marks omitted]); *Hartford Electric Light Co.* v. *Tucker*, supra, 183 Conn. 91 (holding that "this statute [§ 16-262f] does not violate procedural due process on its face"); and we decline to revisit this issue.

We turn, therefore, to the defendants' claim that the statute is unconstitutional as applied. It is axiomatic that "due process is flexible and calls for such proce-

dural protections as the particular situation demands." (Internal quotation marks omitted.) *State* v. *Joyner*, 225 Conn. 450, 470–71, 625 A.2d 791 (1993). Employing the test used in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), and modified in *Connecticut* v. *Doehr*, 501 U.S. 1, 11, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991),[5] we undertake a three part inquiry to determine whether a due process violation has occurred in the context of a dispute, like the present one, between private parties. This inquiry requires "first, consideration of the private interest that will be affected by the [summary proceeding]; second, an examination of the risk of erroneous deprivation through the [summary proceeding] and the probable value of additional or alternative safeguards; and third . . . principal attention to the interest of the party seeking the [summary proceeding] with, nonetheless, due regard for any ancillary interest the government may have in providing the [summary proceeding] or forgoing the added burden of providing greater protections." *Connecticut* v. *Doehr*, supra, 11; see also *Hunt* v. *Prior*, 236 Conn. 421, 439–40, 673 A.2d 514 (1996) (applying *Mathews* test); *Sassone* v. *Lepore*, 226 Conn. 773, 781, 629 A.2d 357 (1993) (applying *Mathews-Doehr* test).

Applying this analysis to the present case persuades us that the defendants' § 16-262f hearing did not violate their rights to procedural due process. We begin by acknowledging that the first *Mathews-Doehr* factor does weigh in favor of the defendants: they have a private interest that is affected by the appointment of a receiver. Cf. *Harkless* v. *Rowe*, 232 Conn. 599, 626, 657 A.2d 562 (1995); *Sassone* v. *Lepore*, supra, 226 Conn. 781. The defendants enjoy a benefit in the apartment building that consists largely of the rental income stream that it generates. By intercepting that income

[5] Hereinafter, the *"Mathews-Doehr"* test.

stream, therefore, the receivership significantly affects the defendants' interest in their property.[6]

The second and third factors of the *Mathews-Doehr* test, however, militate against finding a violation of procedural due process. Under the second factor, the defendants contend that the summary nature of the § 16-262f proceedings creates a high risk of "erroneous or unfair deprivation" of their property interests. This argument actually consists of two parts. First, the defendants maintain that because the § 16-262f hearing did not afford them "the benefit of pleadings, discovery, and the other procedures inherent in civil actions," it left them without an opportunity to put on a full defense *at the time of the receivership hearing*. Second, they claim that the appointment of a receiver of rents resulted in a "final determination" with regard to the amount of unpaid utility charges and so precluded them, under res judicata principles, from raising counter-claims against the plaintiff *at any later time*. Taking these arguments together, the defendants contend that the § 16-262f hearing violated their rights to procedural due process.

We agree that the panoply of procedural and discovery devices available in civil proceedings are not equally

---

[6] The plaintiff contends that the defendants' private interests are only marginally affected because, inter alia: (1) the trial court retains ultimate control over the receiver; (2) the receiver cannot exercise management powers over the rental property; and (3) the legislature intended receivership only as a "short-term, temporary measure." As the United States Supreme Court has indicated in the context of prejudgment attachments, however, even "temporary or partial impairments to property rights . . . are sufficient to merit due process protection." *Connecticut* v. *Doehr*, supra, 501 U.S. 12. Moreover, § 16-262f explicitly provides that the determination of an amount owing on a utility bill "shall constitute a lien upon the real property of [the] owner" and that "[a] certificate . . . may be recorded in the land records of the town in which [the] property is located describing the amount of the lien and the name of the party in default." General Statutes § 16-262f (a). Such "state procedures for creating and enforcing . . . liens are subject to the strictures of due process." *Peralta* v. *Heights Medical Center, Inc.*, 485 U.S. 80, 85, 108 S. Ct. 896, 99 L. Ed. 2d 75 (1988).

available in a summary proceeding under § 16-262f. See *Southern Connecticut Gas Co.* v. *Housing Authority*, supra, 191 Conn. 518. For this very reason, however, we conclude that the appointment of a receiver of rents under § 16-262f does not bar the defendants, under the doctrine of res judicata, from fully litigating their counterclaims against the plaintiff in a subsequent proceeding.

We have recently had occasion to consider the judicial doctrine of res judicata in some detail. See *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 674 A.2d 1290 (1996). In *Delahunty*, we observed that res judicata, like the doctrine of collateral estoppel, "promote[s] judicial economy by preventing relitigation of issues or claims *previously resolved.*" (Emphasis added; internal quotation marks omitted.) Id., 589.

"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; internal quotation marks omitted.) Id.

"[W]e recognize that a decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the [defendants] in the vindication of a just claim." (Citation omitted.) Id., 591. Put otherwise, the principle

of res judicata is based "on the public policy that a party should not be allowed to relitigate a matter which it already has had an *opportunity* to litigate." (Emphasis added; internal quotation marks omitted.) Id.

Consideration of this principle leads us to conclude that the doctrine of res judicata cannot properly be invoked to preclude the defendants from litigating their counterclaims against the plaintiff in a later proceeding. The § 16-262f hearing, by its very design, severely limits a defendant's opportunity to present evidence in support of his counterclaims. See General Statutes § 16-262f (a), which provides that "[t]he *sole purpose* of such a hearing shall be to determine whether there is an amount due and owing between the owner" and the utility. (Emphasis added.) A proceeding under § 16-262f is "a special statutory proceeding and not a civil action"; *Southern Connecticut Gas Co.* v. *Housing Authority*, supra, 191 Conn. 518; and may therefore be "short, concise, peremptory and immediate." (Internal quotation marks omitted.) Id., 523. Thus, not only is it true the defendants did not fully litigate their counterclaims at the receivership hearing, they *could not* fully litigate them in that forum without violating the statute. Under these circumstances, "it would be an inappropriate application of the principles of res judicata" to preclude the defendants from raising these counterclaims at a later time. *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 592.[7]

---

[7] In so holding, we are mindful of the concerns about judicial economy, inconsistent judgments, and vexatious litigation that also inform the res judicata doctrine. See *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 591. We feel, however, that these concerns do not outweigh the defendants' due process right to litigate their counterclaims. First, the summary nature of a § 16-262f hearing ensures that very little in the way of judicial resources is expended at the receivership hearing. Second, a receivership appointment represents a trial court's determination only of the amount owing on the customer's account. It does not represent a judgment on the merits of the defendants' counterclaims and therefore does not subject the trial court to inconsistent judgments. Finally, the defendants, in

It would equally be inappropriate to invoke the doctrine of collateral estoppel to bar the defendants from raising their counterclaims.[8] "[C]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated . . . . The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an *opportunity* to litigate." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 267, 659 A.2d 148 (1995); see also *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 600. "In discussing what constitutes 'full and fair litigation' for the purposes of collateral estoppel, we have stated that if the nature of the hearing carries procedural limitations that would not be present at a later hearing, the party might not have a full and fair opportunity to litigate." (Internal quotation marks omitted.) *Mulligan* v. *Rioux*, 229 Conn. 716, 751, 643 A.2d 1226 (1994), on remand, 38 Conn. App. 546, 662 A.2d 153 (1995).

In this case, the procedural limitations inherent in a § 16-262f hearing denied the defendants an opportunity to litigate fully their counterclaims against the plaintiff. See id. Accordingly, we conclude that collateral estoppel, like its cousin res judicata, cannot properly serve

bringing their counterclaims in a later action, do not pursue harassing or vexatious litigation to the extent that they have legitimate claims that could not have been addressed at the prior proceeding.

[8] The parties have analyzed the issue of preclusion only in terms of res judicata. Res judicata, however, is a "first cousin" of collateral estoppel; *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 589; and either doctrine, if applicable, would serve to bar the defendants from litigating their counterclaims at a later hearing. Because of this conceptual closeness, we address the applicability of collateral estoppel as well.

to bar the defendants from raising their counterclaims at a later proceeding.

The defendants also contend, with respect to the second factor of the *Mathews-Doehr* test, that "additional or substitute procedural safeguards could easily remedy" whatever risk of erroneous judgments inheres in a § 16-262f proceeding. The defendants, however, do not identify what additional safeguards they have in mind and, at oral argument, suggested that nothing short of full blown litigation would suffice. As discussed above, however, protracted litigation is antithetical to the spirit of a § 16-262f hearing. See *Connecticut Light & Power Co.* v. *DaSilva,* supra, 231 Conn. 451. More importantly, the defendants will have an unlimited opportunity to litigate their counterclaims at a later hearing, rendering unnecessary any additional procedural safeguards that they might propose.[9]

Finally, pursuant to the third factor of the *Mathews-Doehr* test, the defendants contend that the "[b]alance of [i]nterests" compels a finding that § 16-262f is unconstitutional. See *Mathews* v. *Eldridge,* supra, 424 U.S. 335. They claim that additional safeguards will not unduly impair "whatever public or private interests" the plaintiff may have.

Under the third *Mathews-Doehr* factor, we must consider the effect any additional procedural safeguards will have on the interest of the government or the plaintiff. *Connecticut* v. *Doehr,* supra, 501 U.S. 11; *Sassone* v. *Lepore,* supra, 226 Conn. 781. Although, in this case, an increase in procedural safeguards will not "impose a substantial fiscal or administrative burden on the government"; *Sassone* v. *Lepore,* supra, 781; it will impose a burden on the plaintiff. As previously discussed, the

[9] We point out that the trial court in this case provided the defendants with an additional procedural safeguard when it gave them the option of posting bond before it appointed a receiver of rents.

plaintiff has a strong need for the prompt, efficient appointment of a receiver under circumstances where it is forced to provide uncompensated gas services. To encumber the § 16-262f proceeding with additional procedural requirements would only marginally benefit the defendants, who will have a later opportunity to litigate their counterclaims, while significantly impairing the plaintiff's ability to receive expeditious compensation for its services. See *Connecticut Light & Power Co.* v. *DaSilva*, supra, 231 Conn. 445–46; *Southern Connecticut Gas Co.* v. *Housing Authority*, supra, 191 Conn. 518–19. We decline to weigh these competing interests in favor of holding that additional procedural safeguards are required at a § 16-262f hearing.

Thus our analysis of the defendants' claims under the framework set forth in *Mathews* and *Doehr* leads us to conclude that the § 16-262f hearing did not unconstitutionally deprive them of their property interest. In view of the important interests protected by a summary hearing under § 16-262f, and in light of our conclusion that the appointment of a receiver of rents under § 16-262f does not prevent the defendants from fully litigating their counterclaims in a subsequent forum, we hold that the defendants' rights to procedural due process were not violated.

The judgment is affirmed.

In this opinion the other justices concurred.