[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
On November 22, 1996, the plaintiff, Angela Cornelio, filed a document with the court entitled "Complaint — Replevin." Stamford Hospital is named as the defendant.
Through this complaint, the plaintiff seeks to recover pap smear specimen slides, containing her tissue and genetic CT Page 7662 material, which were analyzed by the defendant's pathology department between August 21, 1993, and November 8, 1995. The plaintiff alleges that on November 22, 1995, she was diagnosed with endocervical adenocarcinoma, which was in stage IB, and thereafter underwent a radical hysterectomy. The plaintiff further alleges that a consult regarding the pap smear slides by the Yale Pathology Department revealed that her slides were abnormal from 1993 onward. The plaintiff alleges that she has requested the slides from the defendant, but the defendant has refused to provide them to her.
The defendant has filed a motion for summary judgment, accompanied by various exhibits, on the ground that "there is no issue of material fact with respect to the allegations contained in the replevin complaint." The defendant contends that the plaintiff brought this same claim previously in a "Complaint — Bill of Discovery" dated October 9, 1996, which the court denied on November 4, 1996, and that by virtue of both the doctrine of res judicata and the law of replevin, the defendant is entitled to summary judgment.
The plaintiff filed an "objection" to the motion, with various affidavits and exhibits, as well as certain "supplemental" documents.[1]
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989). "Res judicata . . . is a special defense . . . ." Labbe v. Pension Committee, 229 Conn. 801, 816,643 A.2d 1268 (1994). "Of course, there is no reason why, in an appropriate case, once the defense of res judicata has been raised the issue may not be resolved by way of summary judgment . . . ." (Citations omitted.) Id. "The appropriate method to proceed on the defense of res judicata is to first specially plead it . . . and then move for summary judgment . . . ." (Citations omitted.) Valley View ConstructionCo., Inc. v. Sedotto, Superior Court, judicial district of Danbury, Docket No. 318726 (July 12, 1995, Stodolink, J.). "The [defendant's] failure to file a special defense may be treated as waived where the plaintiff fails to make appropriate objection to the evidence and argument offered in support of that defense."Carnese v. Middleton, 27 Conn. App. 530, 537, 608 A.2d 700
(1992). In the present case, the plaintiff has not objected to the res judicata issue on the ground that the defendant has CT Page 7663 failed to raise it as a special defense. Rather, the plaintiff's arguments in opposition go to the merits of the defendant's res judicata claim, and therefore the court will entertain the defendant's claim.
The defendant argues that the plaintiff's replevin complaint makes the same demand as contained in the bill of discovery complaint argued before Judge Nadeau on November 4, 1996, which asserted the plaintiff's right to possession of the original pathology slides. The defendant argues that the plaintiff had the opportunity to have the issue of the return of the slides fully and fairly litigated, and was not successful. The defendant, relying upon portions of the bill of discovery hearing during which the plaintiff's counsel argued that the slides were the property of the plaintiff, concludes that the court should apply the doctrine of res judicata to bar this replevin complaint.
The plaintiff responds by arguing that the doctrine of res judicata should not apply because the bill of discovery complaint and the replevin complaint are not based upon the same facts. The plaintiff claims that the issues litigated during the hearing on the bill of discovery complaint would be subject to the doctrine of res judicata only as to those discovery issues reached by the court. Further, she argues that the court expressly reserved decision on the property issue, which is the basis of the present replevin action, and which was never alleged in the first complaint.
"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose." (Internal quotation marks omitted.) Connecticut Natural Gas Corp. v.Miller, 239 Conn. 313, 322, 684 A.2d 1173 (1996). "The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Internal quotation marks omitted.) Id.
"[A] decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in CT Page 7664 bringing litigation to a close. . . and the competing interest . . . in the vindication of a just claim." (Internal quotation marks omitted.) Connecticut Natural Gas Corp v. Miller,supra, 239 Conn. 322. "Put otherwise, the principle of res judicata is based on the public policy that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." (Emphasis omitted; internal quotation marks omitted.) Connecticut Natural Gas Corp v. Miller, supra,239 Conn. 322-23.
The bill of discovery requests were denied "without prejudice to renewal," as Judge Nadeau determined that the plaintiff did not need the slides to satisfy her burden of supplying the good faith certificate required in medical malpractice cases under General Statutes § 52-190a. (Defendant's Exhibit C: Transcript, pp. 18-19.) Plaintiff's counsel then sought to raise an additional issue as to the plaintiff's proprietary rights in and to the slides. (Transcript pp. 22-23.) Plaintiff's counsel argued that the slides were the plaintiff's property, but Judge Nadeau responded, "I'm not sure of that, and I'm not sure this is the forum in which to determine that." (Transcript p. 23.) Later, the court reiterated that "this denial is without prejudice until you return," (Transcript p. 26), and the plaintiff's "motion is denied without prejudice to renewal should the circumstances markedly change . . . ." (Transcript p. 30.)
Based upon a review of the transcript of the November 4, 1996 hearing on the bill of discovery complaint before Judge Nadeau, it is seen the plaintiff did not have the opportunity to argue the issue of ownership of the slides. As the transcript reveals, neither party was afforded the opportunity to present arguments as to ownership of the slides, because the court determined that the bill of discovery complaint hearing was not the proper forum for such a determination. Thus, it cannot be said that this issue was "actually litigated" on November 4, 1996 such that the plaintiff's claim that she is the rightful owner of the slides is now precluded.
"The term `res judicata' is often used generically to refer to the general concept of former adjudication, namely, that once a question has been finally and authoritatively decided it should not be relitigated." CFM of Connecticut, Inc. v. Chowdhury,239 Conn. 375, 396, 685 A.2d 1108 (1996). "[F]or purposes of res judicata, a judgment will ordinarily be considered final if it is not tentative, provisional, or contingent and represents the CT Page 7665 completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication. . . ." (Citation omitted; internal quotation marks omitted.) Id., 398-99.
Judge Nadeau did not enter a final judgment as to the rightful possession of the slides. The court intimated that it would entertain arguments going to the proprietary interests in the slides at a later time, and that its ruling was without prejudice subject to renewal.
"[W]here a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding." (Internal quotation marks omitted.) Fink v.Golenbock, 238 Conn. 183, 193, 680 A.2d 1243 (1996). "But the scope of matters precluded necessarily depends on what has occurred in the former adjudication." (Internal quotation marks omitted) Id.
Because the plaintiff has not had the opportunity to fully and fairly litigate her claim that she is the rightful owner of the slides, and the court has not ruled with finality on this matter, the doctrine of res judicata does not apply to this claim. Thus, the defendant's motion for summary judgment will not be granted on the ground that the replevin complaint is barred by the doctrine of res judicata.
The defendant has also moved for summary judgment on the replevin complaint on the basis of "the law of replevin." "Replevin is a purely statutory action." Staub v. Anderson,152 Conn. 694, 695, 211 A.2d 691 (1965). Replevin actions are governed by General Statutes § 52-515, which states: "The action of replevin may be maintained to recover any goods or chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner, together with the damages for such wrongful detention." "[W]here a plaintiff in replevin alleges that he has the general property and right of immediate possession and this is denied he cannot prevail unless he proves this to be so." D'Addario v. Abbott, 128 Conn. 506,508, 24 A.2d 245 (1941). "The plaintiff must prevail by the strength of his title rather than by the weakness of the defendant's. He must show an immediate right to possession of the property at the time of bringing the action." Id.
The defendant contends that a patient has neither a property CT Page 7666 interest in pathology slides nor a right to the immediate possession of such slides.[2] The defendant argues that courts have found that medical records, x-rays and other medical information are the property of the hospital or doctor, not of the patient. The defendant believes that case law demonstrates that pathology slides are also not the property of a patient.
The substance of the defendant's argument is based on a line of cases beginning with McGarry v. J.A. Mercier Co., 272 Mich. 501,262 N.W. 296 (1935). In that case, the court held that "[i]n the absence of agreement to the contrary, . . . [x-rays] are the property of the physician or surgeon who has made them incident to treating a patient." McGarry v. J.A. Mercier Co., supra,
262 N.W. 297. The holding also addressed records made by the treating physician, with the court emphasizing that "retention by the physician or surgeon constitutes an important part of his clinical record in the particular case . . . ." Id. The McGarry
court further stated: "It is a matter of common knowledge that X-ray negatives are practically meaningless to the ordinary layman. But their retention by the physician or surgeon constitutes an important part of his clinical record in the particular case, and in the aggregate these negatives may embody and preserve much of the value incident to a physician's or surgeon's experience. They are as much a part of the history of the case as any other case record made by a physician or surgeon. In a sense they differ little if at all from microscopic slides of tissue made in the course of diagnosis or treating a patient, but it would hardly be claimed that such slides were the property of the patient. Also, in the event of a malpractice suit against a physician or surgeon, the X-ray negatives which he has caused to be taken and preserved incident to treating the patient might often constitute the unimpeachable evidence which would fully justify the treatment of which the patient is complaining."McGarry v. J.A. Mercier Co., supra, 262 N.W. 297. This principle is still sound, with one court recently holding that "although patients have rights to access their records concerning medical treatment, . . . it is well settled that these records . . . become property belonging to the doctor." (Citation omitted; internal quotation marks omitted.) Waldron v. Ball Corp. ,619 N.Y.S.2d 841, 843 (1994).
The plaintiff argues however that it is difficult to equate slides which contain human cells to an x-ray or personal notes made by a doctor as part of a patient's case file, because the slides contain human substances drawn from the plaintiff's body CT Page 7667 which are incapable of being duplicated or reproduced. The plaintiff argues that the defendant is merely holding the plaintiff's slides for the plaintiff, and that since the slides are her property, she has an immediate right to possess them. As support for this argument, the plaintiff relies on her own affidavit, in which she states that she never expressed any intention of abandoning possession of the slides, that she always assumed that if she moved or changed physicians, the slides would be forwarded at her request to any new physician whom she selected, and that she had ultimate authority over the slides.
Based upon the reasoning of the McGarry court, the pathology slides should be considered part of the plaintiff's medical records, and as such the defendant should have the primary right to possess them. This would place the slides in the possession of the party that can make the best use of them, as well as maintain them in a safe and clean environment for future study or in the event of the institution of a legal action. At the same time it allows the plaintiff to access information about her treatment for her own review or for the review of an alternative healthcare provider in accordance with the procedures set forth in the General Statutes.[3]
Both parties[4] rely on Moore v. Regents of the Universityof California, 249 Cal.Rptr. 494, 215 Cal.App.3d 709 (App.Div. 198 8), modified 51 Cal.3d 120, 271 Cal.Rptr. 146, 793 P.2d 479
(1990), cert. denied, 499 U.S. 936 (1991), wherein the plaintiff sought to join in the financial gains made by the defendant through its pharmaceutical use of the plaintiff's blood and tissue. There, the plaintiff signed releases allowing the defendant to remove substances from his body, but he was not informed as to how the substances were being used. The plaintiff asserted a cause of action based upon conversion, requiring the court to reach the issue of whether the plaintiff retained a proprietary interest in his excised tissue and bodily substances.
The case was reviewed by the California appellate court, which held that "[a] patient must have the ultimate power to control what becomes of his or her tissues. To hold otherwise would open the door to a massive invasion of human privacy and dignity in the name of medical progress." Moore v. Regents of theUniversity of California, supra, 249 Cal.Rptr. 508. The appellate court, in finding that Moore did have such a property interest, ruled that "[p]laintiff's spleen, which contained certain cells, was something over which plaintiff enjoyed the CT Page 7668 unrestricted right to use, control and disposition." Moore v.Regents of the University of California, supra,
249 Cal.Rptr. 505. "The rights of dominion over one's own body, and the interest one has therein, are recognized in many cases. These rights and interests are so akin to property interests that it would be a subterfuge to call them something else." Id. "The question whether the plaintiff abandoned his spleen, or any of the other tissues taken by the defendants, is plainly a question of fact as to what his intent was at the time . . . . A consent to removal of a deceased organ, or the taking of blood or other bodily tissues, does not necessarily imply an intent to abandon such organ, blood, or tissue." Moore v. Regents of the Universityof California, supra, 249 Cal.Rptr. 509. The plaintiff relies upon this decision to support her claim of a proprietary right to the pathology slides.[5]
In modifying the appellate court decision, the California Supreme Court noted that "[f]irst, no reported judicial decision supports Moore's claim [to a proprietary interest in his excised tissues], either directly or by close analogy. Second, California statutory law drastically limits any continuing interest of a patient in his excised cells." Moore v. Regents of the Universityof California, supra, 51 Cal.3d 137. The California Supreme Court held that since "[a] primary objective of the [California Health and Safety Code provisions] is to ensure the safe handling of potentially hazardous biological waste materials, . . . [o]ne cannot escape the conclusion that the statute's practical effect is to limit, drastically, a patient's control over excised cells. By restricting how excised cells may be used and requiring their eventual destruction, the statute eliminates so many of the rights ordinarily attached to property that one cannot simply assume that what is left amounts to `property' or `ownership' for purposes of conversion law." Moore v. Regents of the Universityof California, supra, 51 Cal.3d 140-41.
The defendant in the present case relies upon the decision of the Supreme Court of California. In ruling on whether Moore had a proprietary interest in his own excised cells, the California Supreme Court specifically held that Moore "clearly did not expect to retain possession of his cells following their removal . . . ." Moore v. Regents of the University ofCalifornia, supra, 51 Cal.3d 136. The defendant has also cited §§ 22a-209b(12)[6] and 22a-209c(b)(2)[7] of the Connecticut General Statutes, which regulate the disposal of pathological waste. The defendant claims that these statutes are CT Page 7669 the same type of statute which the California Supreme Court held limited a patient's proprietary rights to his or her excised tissues.
General Statutes §§ 22a-209b(12) and 22a-209c(b)(2) were enacted in 1994. The legislative history demonstrates that Connecticut has had a difficult time in balancing the interests of public health and safety against the cost-efficient disposal of biomedical wastes.[8] Some of these problems have stemmed from how different types of waste have been defined, with their concomitant definitions dictating the steps to be taken in their proper disposal. The definitions under the 1988 statutes, for example, were "selected using health-based criteria and [included] all waste with any potential for disease transmission." Conn. Joint Committee On the Environment, Pt. 4, 1994 Sess., p. 1131. The 1994 legislation was drawn so that fewer categories of waste were required to be rendered nonrecognizable. As the testimony of Delores Franks, a representative of the Department of Public Health and Addiction Services made clear, "[o]nly three categories of waste, sharps, pathological waste[9] and chemo-therapy waste need be rendered non-recognizable for environmental health and safety reasons . . . ." Conn. Joint Committee On the Environment, supra, p. 1132. "The proposal deletes other definitions that experts have previously testified do not affect public health." Conn. Joint Committee On the Environment, supra, p. 1140. Position papers submitted as part of the Committee's hearings support the distinction between sharps, pathological waste, and chemo-therapy waste, which are to be rendered non-recognizable, and other wastes that need not be rendered nonrecognizable.[10]
This court adopts the reasoning of the California Supreme Court in Moore v. Regents of the University of California in deciding the defendant's motion for summary judgment. The California Supreme Court held that Moore was unable to support a property interest claim to his removed cells based on conversion,[11] which requires a showing of actual interference with ownership or right of possession under California law.[12]
Similarly, the plaintiff here cannot prevail on a replevin complaint, which also requires a showing of a right of immediate possession under Connecticut law.
In addition, the plaintiff signed and dated a form supplied by the defendant on November 22, 1995. Paragraph five of the form states: "This request form is intended to include the right to CT Page 7670 administer drugs, anesthesia or blood transfusions and do all things necessary preliminary to, during or after such procedure, including the right to dispose of all tissue."[13] The plaintiff "clearly did not expect to retain possession of [her] cells following their removal . . . ." Moore v. Regents of theUniversity of California, supra, 51 Cal.3d 136.
Further, Connecticut's biological disposal statutes, cited by the defendant, are based on the same public policy concerns cited by the California Supreme Court, which include the primary objective of protecting the health and safety of citizens by disposing of pathological wastes through certain procedures.[14] Therefore, the court adopts the California Supreme Court's reasoning that, based upon the practical public policy limitations placed on a patient's use of pathological wastes removed from his or her body, as embodied in General Statutes §§ 22a-209b(12) and 22a-209c(2), a patient has little or no interest in such removed substances, and a proprietary interest in them cannot be demonstrated for purposes of maintaining a replevin action.
Finally, the propositions advanced by the California appellate court supporting a patient's right to access his or her records and those statutory rights contained in General Statutes §§ 20-7c(a), 20-7c(b), and 20-7d must be balanced against a healthcare provider's need to retain control over samples drawn from patients in the interest of maintaining and providing accurate information. Particularly here, where the defendant has not prevented the plaintiff from viewing the subject slides, it is unnecessary for the court to create a new property interest for patients in substances removed from their bodies by healthcare providers where no contract has been signed delineating the patient's final rights to those excised substances, and where there are adequate statutory provisions granting the patient access to his or her medical records in place.
The doctrine of res judicata does not apply so as to bar the claims raised by the plaintiff in her replevin complaint. However, the plaintiff cannot maintain a replevin action pursuant to General Statutes § 52-515, because as a matter of law, she does not have a general or special property interest in the slides. For this reason, the court grants the defendant's motion for summary judgment. CT Page 7671
D'ANDREA, J.