[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The respondent, Joseph S. Dey, III, has now amended his answer and moved for summary judgment against the plaintiff Statewide Grievance Committee. Pursuant to § 2-39 of the Rules of Practice, the plaintiff, acting by the Statewide Bar Counsel seeks a reciprocal discipline against him in the Superior Court because of a June 17, 1998 "Order of Discipline" resulting in a disciplinary suspension in the federal court for filing a false affidavit in a separate legal proceeding there. The U.S. District Court (Conn.) order read "Joseph S. Dey, III is hereby suspended from practice for a period of one month. Imposition of the discipline is suspended immediately." This discipline resulted from a complaint by an Attorney Joanne CT Page 11047 Faulkner alleging in it that the respondent filed an affidavit in federal court and that he either falsely asserted in the affidavit that he did not practice in a partnership with other attorneys or that his assertion was not false but that in his general practice he falsely held himself out as practicing in a partnership. Faulkner also grieved the respondent in the U.S. District Court for Connecticut.
Before the disciplinary matter came before the U.S. District Court, on the basis of a similar state grievance, it had previously been reviewed by the Statewide Grievance Committee, acting for the Connecticut Superior Court, which dismissed the grievance arising out of the same facts and circumstances. The respondent now seeks summary judgment on the basis of the doctrine of res judicata which he claims bars this proceeding because of the prior action of the Statewide Grievance Committee. The plaintiff maintains this doctrine cannot bar the proceeding because the respondent took the position in the earlier state proceeding that he was not a partner of the two other attorneys in a law firm which used all three lawyers' names as its trade name on letterheads, but in the later federal grievance proceeding conceded that an affidavit filed in a federal lawsuit which prompted both the state and federal grievances was false insofar as it alleged no partnership existed. In the court's opinion, the difference between the two views the respondent took about whether the business structure constituted a partnership is explained by the evolution of his knowledge over the course of time about the legal effect of utilization of a firm name in light of the law of agency and apparent authority. The important consideration is that even with this concession none of the material underlying facts have changed between the first statewide proceeding and the present time. It is worth noting that counsel for the federal grievance committee conceded in the federal proceeding that he had no evidence that the respondent intended to prevaricate to Judge Nevas in the original affidavit filed in the federal court which is the subject matter of this grievance but opined that the respondent had not paid sufficient attention to the legal accuracy of his affidavit.
Res judicata, which the respondent invokes, and the doctrine of collateral estoppel are related. While the court does not view the doctrine of res judicata as a bar, it holds that the related doctrine of collateral estoppel should preclude the statewide counsel from seeking reciprocal discipline under § 2-39 of the Rules of Practice. "Claim preclusion (res judicata) and issue CT Page 11048 preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. . . .
"The two doctrines protect the finality of judicial determinations, conserve the time of the court and prevent wasteful relitigation. . . . Res judicata, or claim preclusion, is distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim." (Citations omitted; internal quotation marks omitted.) Mazziotti v. Allstate Insurance Co.,240 Conn. 799, 812, 695 A.2d 1010 (1997). "A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; internal quotation marks omitted.)Connecticut Natural Gas Corp. v. Miller, 239 Conn. 313, 322,684 A.2d 1173 (1996). "[A] decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of . . . the vindication of a just claim. . . . Put otherwise, the principle of res judicata is based on the public policy that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 322-23.
"In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. . . ." (Citations omitted; internal quotation marks omitted.) Mazziotti v. Allstate Insurance Co., supra,240 Conn. 812. Moreover, "[i]n order for collateral estoppel to CT Page 11049 apply . . . there must be an identity of issues, that is, the prior litigation must have resolved the same legal or factual issue that is present in the second litigation." (Internal quotation marks omitted.) Connecticut National Bank v. Rytman,241 Conn. 24, 38, 694 A.2d 1246 (1997). The legal and factual issues surrounding the affidavit which respondent Dey filed and whether the association of attorneys constituted a legal or financial partnership or merely some association whose trade name contravened the canons were already thoroughly considered by the members of the statewide committee which dismissed the grievance. "Both issue and claim preclusion express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Internal quotation marks omitted.) Mazziotti v. AllstateInsurance Co., supra, 812.
At the hearing on this motion and another related motion, the respondent had the opportunity to mark exhibits into evidence and was permitted to make those marked his documentary exhibits for the purposes of this motion. The plaintiff does not dispute these documentary attachments which chronicle prior proceedings at both the state and federal grievance hearings. Nonetheless, the statewide grievance counsel maintains that because in the prior proceedings before the Statewide Grievance Committee the respondent did not concede that the affidavit which prompted both grievances was false, the respondent has not established that he is entitled to judgment as a matter of law because there is a new fact not present in the first state grievance hearing, namely, the concession in the federal proceeding that the affidavit was false in some particulars.
"A century ago it was apparently not uncommon for a lawyer disbarred by one court to travel to another community, become admitted to the local bar, and continue to practice law." C. W. Wolfram, Modern Legal Ethics, (1986) § 3.4.6, p. 115. It was to avoid this type of result that the rules of practice in Connecticut and other jurisdictions enacted rules of reciprocal discipline, so that a state did not become dumping grounds for the renewed practices of professional miscreants who had been disciplined elsewhere. However, this rule was never intended to generate a second reciprocal state disciplinary proceeding where the Connecticut Statewide Grievance Committee had already heard, decided and dismissed the identical complaint concerning the propriety of what had occurred in an affidavit filing in the sister jurisdiction. After discipline has been imposed in one CT Page 11050 jurisdiction typically the second jurisdiction "will adopt the findings of the first court under a modified rule of res judicata." Id., 116. Although the effect of the federal disciplinary order was not to interrupt the respondent's right to practice law in the U.S. District Court (Conn.), nonetheless the effect of the federal order was not to adopt the earlier decision of the Connecticut Statewide Panel to dismiss. Under the typical rule of modified res judicata, the second reviewing court normally will not reject the first state's findings unless it is demonstrated that the first state's findings were seriously defective. See id.
Here, the U.S. District Court made no finding that the prior Connecticut grievance proceedings or decision were defective in any way, much less seriously defective, nor does anyone claim that in this proceeding.
Most courts extend the reciprocity doctrine to include a practice of imposing a disciplinary sanction that normally will be the same in operative length and severity as that imposed in the first jurisdiction. An inappropriately lenient or severe sanction, however, will not be copied. Connecticut follows that majority view.
The Connecticut Code was adopted from an American Bar Association model code and § 2-39 providing for reciprocal discipline calls for "commensurate action." An action is commensurate if it is of the same size, extent or duration.
The following procedural background is not in dispute.
The Federal Grievance Committee conducted an investigation, including holding a hearing, and on or about October 17, 1997, filed a presentment against the respondent in the United States District Court alleging that the respondent presented an affidavit to the District Court in the case of Ferron C. Young v.Joseph S. Dey, III which was materially misleading and false. As part of the federal presentment proceedings, the respondent signed a stipulation on May 18, 1998 stating, in part, as follows:
 "17. Mr. Dey hereby stipulates that the contents of Paragraph 1 of the Affidavit and the narrative section of the accompanying Charging Order Objection and Motion To Strike Objection contained CT Page 11051 false statements of material facts inasmuch as the firm of . . . was, at the time those pleadings were filed and signed, a partnership under the laws of the State of Connecticut."
Among other salient provisions of this stipulation were:
 "18. Mr. Dey further stipulates that he filed the pleadings with the court with the intent that it rely thereon. However, he did not file the pleadings in question with the intent to defraud or mislead the Young Court as to the legal status of ___________.[1] His intent was to advise the court as to its financial status, that the assets of the entity could not be reached by Ferron Young in the Young action. In this regard, Dey focused solely on whether there existed a financial arrangement by and between Messrs. _____________,[2] Otzel and Dey whereby he shared in the fees generated by the other members of that firm. Since there was no such fee arrangement, he stated that no partnership existed.
 19. Mr. Dey further stipulates that he failed to make a reasonable inquiry as to the governing legal principles concerning the elements of a partnership in Connecticut at the time of filing the above-referenced pleadings. He assumed, without researching the question, that the absence of a financial sharing of profits meant that no partnership could exist."
On August 16, 1996, over two years ago, almost one year prior to the federal court disciplinary proceedings, the Ansonia/Milford Judicial District Grievance Panel filed with the statewide bar counsel a grievance complaint against the respondent arising out of an identical complaint by JoAnne Faulkner. At issue in the complaint was the propriety of the respondent's assertion in the affidavit in question. The complaint was assigned to the New London Judicial District Grievance Panel. On September 18, 1996, the New London panel filed a determination that there was no probable cause that the respondent violated Rule 3.3 of the Rules of Professional Conduct ("Candor Toward the Tribunal"), concluding that there was "insufficient evidence to conclude R[espondent] made a false CT Page 11052 statement of fact in his affidavit, and there is no evidence to suggest that the statement was knowingly falsely made."
In testimony before a reviewing committee of the Statewide Grievance Committee, the respondent asserted that there was no partnership. The reviewing committee issued a proposed decision recommending that the complaint be dismissed. On October 16, 1997, the Committee adopted the proposed decision and dismissed the grievance complaint. The state panel did find that there was probable cause that the respondent violated Rule 7.5(d) ("Firm Names and Letterheads") in that "[t]he name of R[espondent]'s former law firm suggest a partnership" but dismissed the grievance anyway.
One recent case has held that, absent some special circumstance, § 2-39 of the Rules of Practice does not entitle a grievant to an evidentiary hearing on the underlying factual claims that led to suspension in the sister state.Statewide Grievance Committee v. Klein, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 165292 (August 17, 1998, Karazin, J.) (4 Conn. Ops. 1045).
The court believes this matter can be disposed without a further evidentiary hearing based on the summary judgment motion filed.
Unlike the typical reciprocal case, the matter of how the respondent and his former law associates structured and named their law practice, and its legal effect, has already been carefully considered by a subcommittee of the Statewide Grievance Committee of the Superior Court appointed to do so. They thoroughly aired the matter and recommended dismissal to the full committee which then accepted their report and dismissed the grievance. As far as this court is concerned, they reached a proper decision. None of the material underlying facts changed between the time the statewide committee heard the case and the action by the federal committee. The only thing that has changed is that the respondent now has conceded that an averment the respondent made in the federal court affidavit that his professional association did not constitute a partnership is false. That concession apparently results from more legal advice and knowledge he has gained and obtained since making that affidavit several years ago about the legal effect of using the names of three lawyers practicing together. CT Page 11053
The court can well understand why the respondent took the initial view he did about whether his association constituted a partnership.
 * The association of three lawyers did not own any furniture, fixtures, equipment or the building in which the practice was carried on. All of this was owned by firm founder.
 * The respondent owned none of the furniture, fixtures or building.
* There was no written partnership agreement.
 * The respondent never received any cash distribution from either of his associates or from any "partnership" by that name, despite an association of several years.
 * The respondent never received a form K-1 which the IRS requires be given to partners each tax year showing their distributions of income and allocations of depreciation, et cetera.
 * The respondent always filed a Schedule C income tax return used by sole proprietors.
* All other lawyers in the association did likewise.
 * He was required to pay 25% of total office expenses and an additional 50% of his total professional fees to this entity.
 * He was refused information about what the actual expenses of the association were on the one occasion he asked about them.
 * Although one of the traditional hallmarks of a partnership is the mutual sharing of profits and losses, not only did he never share in the profits of the others, but he took sole responsibility for a federal court judgment against him arising out of the practice of the profession and did not look to his law associates to pay any part of this business loss, and did ultimately pay it individually.[3]
CT Page 11054
 * No distributive share of assets was ever paid to the respondent when the business arrangement ended.
In the federal grievance proceeding, the observation was made by Judge Eginton that what the stipulation made by the respondent in the federal grievance proceeding and the state proceeding was saying was that legally "there was a partnership but they never practiced law under the partnership. "
The court holds that under the facts and circumstances of this case, while the Superior Court could not be barred from hearing the claim in this particular case if it chose to do so, there is no good reason to do so, and the Statewide Bar Counsel as litigant should not relitigate an issue that has already been decided on the merits by a Committee of the Superior Court, in this court's opinion, correctly. The court further holds that the issue of whether the respondent made a truthful federal court affidavit or properly used a firm name with two others was already considered in the prior statewide proceeding and should not be resurrected in a subsequent § 2-39 reciprocal disciplinary procedure. In that sense, while it does not equate with the respondent's claim of res judicata, it does invoke the related doctrine of collateral estoppel. The record on which the respondent relies for his motion is clear that the statewide reviewing committee knew the respondent practiced law using his surname and that of two other attorneys as a firm name; that from December 1985 he practiced with the same two lawyers in an association which bore only their names until his was added in July 1987; and the attorneys used a common juris number and were insured by a common malpractice policy. They were also aware that the respondent received no share of profits, filed income tax as a sole proprietor and paid the judgment against him himself and did not intend to mislead anyone by his Ferron Young affidavit.
Rule 7.5.(d) of the Rules of Professional Conduct provides:
 "(d) Lawyers may state or imply that they practice in a partnership or other organization only when that is the fact."
The official commentary regarding this particular rule provides:
 "With regard to subsection (d), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, `Smith and CT Page 11055 Jones,' for that title suggests partnership in the practice of law."
The reviewing committee and the Statewide Grievance Committee was aware of this canon and commentary. No doubt they were aware of the disparity and inequality in treatment of trade names under the Rules of Professional Conduct witnessed by the fact that the rules of professional conduct and commentary do not prohibit use of the names of dead persons as a trade name for a law firm, although presumably even the Uniform Partnership Act does not permit the living to partner with the dead. See General Statutes § 34-69(4) repealed and readopted in modified form in Section 31, subsection (7)(A) Public Act 95-341 (1995), effective July 1, 1997. The rationale of commentary interpretations that partnership is the implied legal effect of using the surnames of lawyers who share offices under a common firm name breaks down when the same rules allow the use of surnames of the dead. No member of the public can look to the legal skills or personal assets of the nonpracticing dead, yet the surnames of many who have long since passed from this life are permissibly carried on as the trade name of law firms which continue to do business throughout the state today. If the one impermissibly suggests a partnership with the living, does the other a partnersnip with the dead?
The Statewide Grievance Committee was also aware that it had previously ruled that a grievance for the same use of a firm name by Attorney _________________,[4] founder of the respondent's former firm, should be dismissed, the same issue having been involved. They knew no one had been deceived, particularly the grievant, JoAnne Faulkner. She had sued only the respondent, not his associates. She took judgment only against him individually. The judgment was paid and paid by him individually. He had personal assets which he ultimately used to pay the judgment. The court finds that the same issues were earlier decided by the Statewide Committee and the Statewide Bar Counsel should be precluded from raising it again under § 2-39. When an issue has been fully and fairly litigated and finally decided, it should come to rest. Furthermore, apart from the considerations of collateral estoppel, the court believes it would not be prudential to give further consideration to this matter.
Summary judgment is entered for the defendant. This court sees no need or cause to entertain this matter further or impose any reciprocal discipline on the respondent. CT Page 11056
Flynn, J.